JACOB B. AND ARDYTHE J. DAGGETT MILLER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 37640-87.        Filed March 8, 1990.

*Douglas Scott Maynard* and *Earle A. Sylva II,* for the petitioners.

*Christopher J. Croudace,* for the respondent.

GERBER, *Judge:* Respondent, in a statutory notice of deficiency dated September 1, 1987, determined the following additions to petitioners' 1982, 1983, and 1984 income tax:

| Year | Sec. 6651 (a)(1) & (2)[1] | Sec. 6653(a)(1) | Sec. 6654 | Sec. 6661 |
|------|----------------------------|------------------|------------|------------|
| 1982 | $3,146 | $629* | $1,532 | $3,146 |
| 1983 | 2,816 | 563* | 691 | 2,816 |
| 1984 | 2,934 | 587* | 740 | 2,934 |

*Plus 50 percent of the interest due on the underpayment pursuant to sec. 6653(a)(2).

The additions relate to petitioners' failure to timely file their joint income tax returns and timely pay their income tax. The notice of deficiency, however, did not reflect income tax deficiencies because petitioners made untimely payment of that portion of the tax liability prior to respondent's issuance of a deficiency notice. By an amended answer, respondent has alternatively alleged that petitioners are liable for the section 6653(b) addition to tax for fraud.

Respondent concedes that the section 6661 addition to tax is not applicable here. By an order dated November 7, 1988, we held that we lacked jurisdiction, in this case, to redetermine additions to tax determined under sections 6651 and 6654.

The primary issues remaining for our consideration concern the validity and timeliness of the notice of deficiency, as it relates to petitioner Ardythe J. Daggett Miller (Ardythe). Respondent issued a joint notice of deficiency in the names of both petitioners which reflected deficiency determinations in petitioners' 1982, 1983, and 1984 joint income tax. Respondent timely mailed the joint deficiency notice to addresses that later proved to belong solely to petitioner Jacob B. Miller (Jacob); but no deficiency notice was mailed to Ardythe's "last known address." Petitioners had previously established separate residences. Following the expiration of the 3-year period for assessment (section 6501(a)) and before the expiration of the 90-day period within which to petition this Court (section 6213(a)),

[1] All section references are to the Internal Revenue Code as amended and in effect for the years at issue. All Rule references are to this Court's Rules of Practice and Procedure.

Ardythe received actual notice of respondent's deficiency determination and, along with Jacob, timely petitioned this Court. These facts present the following issues for our consideration: (1) Whether respondent mailed a joint notice of deficiency to Ardythe; (2) whether actual notice of the deficiency and timely filing of a petition are sufficient to provide this Court with jurisdiction; (3) whether the joint notice of deficiency was issued timely (as it relates to Ardythe) under section 6501(a); and (4) whether petitioners are liable for the addition to tax for fraud under section 6653(b), or, alternatively, whether petitioners are liable for the addition to tax for negligence under section 6653(a).

### FINDINGS OF FACT

Most of the facts have been stipulated. The stipulation of facts, together with the attached exhibits, are incorporated by this reference. At the time their petition was filed, Jacob[2] resided in San Leandro, California, and Ardythe resided in Mountain View, California. During the years 1982, 1983, and 1984, petitioners were married and resided together; however before respondent's September 1, 1987, issuance and mailing of the notice of deficiency, petitioners separated and were subsequently divorced. Petitioners are educated professionals. Jacob was employed as an electronics engineer, and Ardythe was employed as a "computer specialist."

Petitioners were aware of their obligation to file Federal income tax returns and were diligent in preparing and filing their returns for taxable years prior to 1982. Petitioners' 1981 joint income tax return was prepared by the accounting firm of Deloitte, Haskins & Sells, and, like petitioners' previous returns, was timely filed. Petitioners reported total 1981 wages of $54,196, adjusted gross income of $66,017, and a tax liability of $11,832. All but $513 of petitioners' 1981 tax liability was paid through withholding tax credits.

During June 1982, approximately 2 months after filing the 1981 return, Ardythe prepared and submitted to her employer, Ford Aerospace, an Employee's Withholding Allowance Certificate (Form W-4) claiming that she was

---

[2]Jacob did not attend the trial of this case, but was represented by counsel.

exempt from withholding taxes because she did not owe any Federal income tax for 1981 and did not expect to owe any income tax for 1982. Also during June 1982, Jacob prepared and submitted to his employer, Honeywell Information Systems, a Form W-4 in which he claimed that he was exempt from withholding taxes because he did not owe any Federal income tax for 1981 and did not expect to owe any income tax for 1982. During 1983, petitioners each prepared and submitted additional Forms W-4 again claiming that they were exempt from withholding taxes. All Forms W-4 were signed under a "penalty of perjury."

At the time petitioners prepared and submitted the Forms W-4, Ardythe believed that she and her husband would have an income tax liability owing for those taxable years. Petitioners were gainfully employed and they timely received Wage and Tax Statements (Forms W-2) from their employers which correctly reflected their wages for each of the 3 taxable years in issue. The Forms W-2 reflected total wages of $75,139.71 for 1982, $73,341.57 for 1983, and approximately $80,592 for 1984.

Once petitioners began submitting false Forms W-4 to their employers (claiming that they were exempt from withholdings), petitioners ceased filing income tax returns and, consequently, reporting and paying their income tax. The failure to file, report, and pay continued until after respondent's Examination Division questioned petitioners regarding their failure to file.

After petitioners were contacted by respondent, they were at first unwilling to comply with the revenue laws. Sometime prior to May 25, 1984, respondent assessed section 6682 penalties against each petitioner for submitting false information with respect to the Forms W-4 submitted in 1982 and 1983. After learning of this assessment, Ardythe wrote at least two letters to respondent objecting to the penalty. In a letter mailed by Ardythe and received by respondent on or about May 25, 1984, Ardythe demanded that respondent "instruct my company to obey the W-4 form as filed." Ardythe also threatened legal action against the Internal Revenue Service, its agents, and her own employer.

After being advised by their attorney to file, petitioners filed untimely 1982, 1983, and 1984 joint income tax returns on September 23, 1984, September 26, 1984, and May 14, 1986, respectively. No extension of time for filing the returns had been requested or granted.

On their 1982, 1983, and 1984 returns, petitioners reported their home address as 6111 Springer Way, San Jose, California 95123. The returns also reported petitioners' wage income and tax liabilities as follows:

| Year | Wage income | Tax liability |
|------|-------------|---------------|
| 1982 | $75,140 | $12,587 |
| 1983 | 73,342 | 11,264 |
| 1984 | 80,592 | 11,737 |

By submitting false Forms W-4 to their employers and failing to otherwise file returns or pay tax, petitioners intentionally underpaid their income tax in the amounts of $3,884 for 1982, $10,029 for 1983, and $2,877 for 1984.

Respondent accepted petitioners' late filed 1982, 1983, and 1984 income tax returns as correctly reporting petitioners' total income tax liabilities for those years (without considering the potential for additions to tax). Their income tax liabilities (without considering potential additions to tax) were satisfied by petitioners' remitting payment with the returns or by the application of excess withholding in subsequent years. Presumably, petitioners filed new Forms W-4 sometime after being contacted by respondent's agents.

Sometime after 1984, Ardythe separated from her husband, Jacob, and established a separate residence at 1983 San Luis Avenue, #27, Mountain View, California 94043 (Mountain View address). Likewise, Jacob established his own residence after the separation, first in Las Vegas, Nevada (Las Vegas address), and then at 2811 San Leandro Boulevard, #103, San Leandro, California 94578 (San Leandro address). Ardythe reported her new Mountain View address as her current address on her timely filed 1986 Federal income tax return. Ardythe's Mountain View address was posted, during the week of May 10, 1987, in respondent's national computer system (at the National Computer Center).

On September 1, 1987, respondent issued a joint "zero income tax" deficiency notice to petitioners. Although the notice reflected no deficiencies in petitioners' income tax for 1982, 1983, and 1984, it did reflect respondent's determination that petitioners were liable for additions to tax under sections 6651, 6653(a), 6654, and 6661.

Respondent mailed the joint statutory notice of deficiency to petitioners by certified mail, addressed as follows:

> JACOB B. & ARDYTHE J. DAGGETT MILLER
> 2811 SAN LEANDRO BLVD 103
> SAN LEANDRO, CA 94578

This was Jacob's "last known address" for purposes of section 6212. Jacob received the notice within 5 days of its mailing. Respondent also mailed a copy of the joint notice of deficiency to Jacob's Las Vegas address. Apparently believing that petitioners were still residing together, respondent's agents did not mail a duplicate of the joint notice of deficiency to Ardythe at what the parties agree was her "last known address"—the Mountain View address.[3]

On or about October 12, 1987, during a telephone conversation with her ex-husband, Jacob, Ardythe was informed of the joint notice of deficiency and that it reflected respondent's deficiency determination with respect to both spouses. On or about the same date, Jacob mailed a copy of the joint notice of deficiency to Ardythe who, in turn, forwarded it to her attorneys. On November 30, 1987, Ardythe and Jacob joined in and caused the timely filing of a petition in this Court. A copy of the joint notice of deficiency was attached to the petition.

## OPINION

Four issues are presented for our consideration: (1) Whether respondent mailed a notice of deficiency to Ardythe; (2) whether actual notice of the deficiency and timely filing of a petition are sufficient to provide this Court with jurisdiction; (3) whether the joint notice of

---

[3]Although it is clear that Ardythe's new address was available in respondent's computers, no explanation has been provided as to why respondent's agent, who prepared the notice for mailing, was unaware of the new address.

deficiency was timely (as it relates to Ardythe) under section 6501(a); and (4) whether petitioners are liable for the addition to tax for fraud under section 6653(b), or, alternatively, whether petitioners are liable for the addition to tax for negligence under section 6653(a).

## Jurisdiction: General Considerations

The parties agree that respondent determined deficiencies with respect to Ardythe and Jacob. Respondent's issuance of a joint notice of deficiency in Ardythe's and Jacob's name is the obvious basis for the parties' agreement. Further, petitioners, who filed joint income tax returns before their divorce, each notified respondent that they had established separate residences by means of separate returns filed for subsequent taxable years. It is agreed that respondent did not mail a duplicate original joint notice to Ardythe's Mountain View address. Respondent's agents, however, did attempt to provide Ardythe with notice of the deficiency determination by mailing it to addresses which later proved to belong only to Jacob.

These facts present a question of first impression in an area of the law that is not without ambiguities. Petitioners contend that respondent is statutorily required to mail a duplicate original notice to each spouse at his/her "last known address" after he is notified of their separate addresses. They argue that the notice is invalid and ineffectual as to Ardythe because respondent failed to mail a duplicate original joint notice to her "last known address."

In essence, petitioners argue that respondent's failure to mail a duplicate joint notice to Ardythe's Mountain View address raises the fundamental and novel issue of whether respondent issued and mailed a notice or otherwise attempted to communicate a deficiency determination to Ardythe. More specifically, Ardythe argues that respondent's failure to mail a duplicate joint notice to her as required by section 6212(b)(2), may be tantamount to a complete failure by respondent to mail her a deficiency notice. Ardythe places no significance on the fact that a joint determination was made and a joint notice was issued to her, but mailed to addresses belonging only to Jacob. She concludes that the 3-year period for assessing a

deficiency has expired and that respondent is barred from assessing any tax deficiency as to her.

Respondent agrees that under the standard of *Abeles v. Commissioner*, 91 T.C. 1019 (1988), he was charged with knowledge that petitioners had established separate residences and of Ardythe's Mountain View address.[4] He also agrees that section 6212(b)(2) requires the mailing or communication of a duplicate joint notice to Ardythe at her last known address and that he failed to mail or attempt to mail a duplicate joint notice to Ardythe's last known address— the Mountain View address. Respondent, however, contends that while he failed to comply with the last known address requirement of section 6212(b), he did comply with the more basic requirements of sections 6212(a), 6213(a), and 6503(a)(1) by determining a deficiency with respect to Ardythe and mailing notice of or otherwise communicating his determination to Ardythe. Simply stated, respondent argues that the notice was improperly mailed, but nonetheless mailed and his failure to comply with the last known address requirement of section 6212(b)(2) did not invalidate the notice. Finally, respondent argues that we have jurisdiction over Ardythe's case because he mailed a joint notice to Ardythe, Ardythe received actual notice of respondent's determination, and Ardythe timely petitioned this Court.

We, therefore, must determine whether respondent either: (1) Failed to mail notice of or otherwise communicate his deficiency determination to Ardythe, as petitioners argue, or, in the alternative, (2) failed to satisfy the last known address requirement of section 6212(b), as respondent argues. The character of the error is pivotal in this case because in the first instance respondent may be barred from assessing and collecting a deficiency if he fails to mail

---

[4]In his opening brief, respondent admits that:

It is undisputed in this case that petitioner Ardythe Miller separated from her former husband and co-petitioner, Jacob Miller, after filing the late-filed joint returns for the years at issue and before the notice of deficiency was issued. Before the notice was sent, Ms. Miller filed a subsequent return using a separate filing status, which gave a different address for her from that of her former husband. Moreover, this new address had [been] posted to respondent's computers prior to the mailing of the deficiency notice. Despite these facts, respondent sent only a single joint notice of deficiency to petitioner Jacob Miller. No duplicate notice was sent to Ms. Miller at her new address.

It should be noted, however, that our holding in *Abeles v. Commissioner*, 91 T.C. 1019 (1988), had not been published or available to respondent at the time of the issuance of the notice of deficiency in this case.

notice of or otherwise communicate his deficiency determination to the taxpayer. However, respondent's mailing of a deficiency notice to an address that is not the taxpayer's last known address is not necessarily fatal to respondent's ability to assess and collect the deficiency where the taxpayer receives actual notice of the determination. See *Frieling v. Commissioner*, 81 T.C. 42 (1983).

1. *Notice of Deficiency—"Determination," "Mailing," and "Last Known Address" Requirements.*

With some exceptions not applicable here, respondent is precluded from assessing and collecting any tax deficiency without first mailing a notice of deficiency under section 6212(a)[5] or otherwise notifying the taxpayer of the deficiency. Sec. 6213(a). Pursuant to section 6213(a), within 90 days (or, in some circumstances not applicable here, 150 days) after the mailing of a notice of deficiency, the taxpayer may file a petition with this Court. The mailing of a notice of deficiency in accord with section 6212 tolls the running of the period of limitations on assessment of a deficiency and starts the running of the 90-day period for filing a petition with this Court. See secs. 6503(a)(1) and 6213(a). The mailing of a notice of deficiency also bars assessment and collection during that 90-day period and, if a petition is filed in this Court, bars such assessment and collection until the decision of this Court has become final. Sec. 6213(a). Our jurisdiction in deficiency cases is generally dependent upon respondent's mailing a notice of deficiency to the taxpayer under section 6212 and the timely filing of a petition with this Court under section 6213.[6] *Frieling v. Commissioner, supra* at 46-47.

---

[5]Sec. 6212(a) provides:

If the Secretary determines that there is a deficiency in respect of any tax * * *, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail.

[6]Although rarely focused upon, it should be understood that respondent is not limited to the use of a mailing by certified or registered mail to effectuate notice of his deficiency determination for purposes of sec. 6212. However, as we will discuss *infra*, such a mailing to the taxpayer's "last known address" provides respondent with a safe harbor for purposes of staying the limitations period for assessment under sec. 6501 and commencing the 90-day limitations period for the taxpayer to petition this Court under sec. 6213. The taxpayer need not even receive the notice for this to occur. *Frieling v. Commissioner*, 81 T.C. 42 (1983).

In addition to certified or registered mail, respondent may use regular mail, hand delivery, and/or actual communication. However, such methods must provide the taxpayer with actual notice of respondent's determination to be sufficient under sec. 6212 for purposes of staying

Section 6212(b) guides respondent in determining where to mail the notice of deficiency. Paragraphs (1) and (2) of section 6212(b) provide, as follows:

SEC. 6212(b). ADDRESS FOR NOTICE OF DEFICIENCY.—

(1) INCOME AND GIFT TAXES AND CERTAIN EXCISE TAXES.—In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A, chapter 12, chapter 42, chapter 43, chapter 44, or chapter 45 if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A, chapter 12, chapter 42, chapter 43, chapter 44, chapter 45, and this chapter even if such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence.

(2) JOINT INCOME TAX RETURN.—In the case of a joint income tax return filed by husband and wife, such notice of deficiency may be a single joint notice, except that if the Secretary has been notified by either spouse that separate residences have been established, then, in lieu of the single joint notice, a duplicate original of the joint notice shall be sent by certified mail or registered mail to each spouse at his last known address.

We have construed section 6212(b)(2) in conjunction with section 6212(b)(1). *Dolan v. Commissioner,* 44 T.C. 420, 433 (1965). In *Dolan v. Commissioner, supra,* we found that in the case of a deficiency in respect of a joint return, respondent has the option of sending each spouse his/her own separate, individualized notice of deficiency under section 6212(b)(1), or respondent may, at his option, send a single joint deficiency notice to both spouses under section 6212(b)(2) which indicates that a deficiency has been determined against both spouses. However, if respondent has been notified that the spouses have established separate residences, he may still issue a joint notice provided that he mails a duplicate original of the joint notice to each spouse at his/her last known address.

In *Abeles v. Commissioner,* 91 T.C. 1019, 1030-1031 (1988), we held that compliance with section 6212(b)(2)—

---

the period for assessment under sec. 6501 and commencing the 90-day period for petitioning this Court. See *McKay v. Commissioner,* 89 T.C. 1063, 1069 n. 7 (1987), affd. 886 F.2d 1237 (9th Cir. 1989), and cases cited therein. See also *Clodfelter v. Commissioner,* 527 F.2d 754, 757 n. 7 (9th Cir. 1975), affg. 57 T.C. 102 (1971); *Tenzer v. Commissioner,* 285 F.2d 956, 957-958 (9th Cir. 1960). Moreover, this Court's jurisdiction will be invoked if the taxpayer receives actual notice and timely files his petition. *McKay v. Commissioner,* 886 F.2d 1237 (9th Cir. 1989), affg. 89 T.C. 1063 (1987).

requires respondent to send duplicate originals of the joint notice of deficiency to each spouse's last known address whenever respondent has been notified, prior to the time that the notice of deficiency is to be issued, that the joint filers maintain separate last known addresses. Further, this rule shall apply so long as respondent is given notice that the two spouses do not share the same last known address, even if respondent is given notice of only one of such spouses' last known addresses.

In determining whether respondent "has been notified" of separate last known addresses, we focused on whether the last known address of one spouse was different than the last known address of the other spouse. *Abeles v. Commissioner, supra* at 1036-1037.

When Congress considered whether notice of a deficiency determined against joint filers could be adequately provided in one joint notice, it focused upon the type of relationship which is presumed to exist between spouses. *Abeles v. Commissioner, supra* at 1028. "Congress believed that most marital relationships maintain open and frequent communication between the spouses such 'that receipt of the notice by either spouse would be well calculated to equal notice to both.' " *Abeles v. Commissioner, supra* at 1028, quoting *Cohen v. United States,* 297 F.2d 760, 773 (9th Cir. 1962). Thus, respondent may mail a single joint notice to joint filers. However, Congress also recognized that not all marital relationships continued to deserve such a presumption of open communication. As we stated in *Abeles v. Commissioner, supra* at 1028-1029:

It is for this reason that Congress provided for the issuance of a duplicate original of the joint notice to each of the joint filers. That is, Congress provided that duplicate originals of the joint notice of deficiency should be sent to each spouse's last known address when, by reason of communications the Commissioner has received from the taxpayer, it is evident that a single joint notice could not reasonably be expected to constitute notice to both joint filers. See *Dolan v. Commissioner, supra* at 434, where we said that "The provision relating to the sending of duplicate originals of the joint notices where respondent has been notified that the spouses have *separate addresses* clearly was intended to assure that each spouse received actual notice, if respondent chose to send a joint notice of deficiency." [Fn. ref. omitted.]

In the present case respondent was constructively charged with notice of Ardythe's separate address, but in

actuality the joint deficiency notice was sent to what respondent likely thought was the "last known address" of both petitioners. Although respondent clearly did not meet the last known address or duplicate original joint notice requirements, the joint deficiency notice was a notice of a deficiency determination within the meaning of section 6212(a). Further, it notified Ardythe that a deficiency had been determined against her, and it gave Ardythe the opportunity to petition this Court for a redetermination of the deficiency without having to first pay the deficiency. See *Abeles v. Commissioner, supra* at 1028; *McKay v. Commissioner,* 89 T.C. 1063, 1067 (1987), affd. 886 F.2d 1237 (9th Cir. 1989); *Frieling v. Commissioner,* 81 T.C. 42, 46 (1983).

Respondent's failure to send a duplicate notice to Ardythe's Mountain View address bears upon whether the notice was mailed to the "correct" address(es), rather than to whether a notice was issued and/or mailed at all. The contrary view would be incompatible with the fact that the joint notice in this case was issued to, delivered to, and received by Ardythe, one of the intended recipients. Therefore, we conclude that respondent *mailed* Ardythe a notice of deficiency and/or that his violation of section 6212(b)(2) was not tantamount to a lack of mailing. To find otherwise would ignore the reality of this situation.

Our holding follows the statutory construction of section 6212. Subsection (a) authorizes the Secretary to send a notice of deficiency "to the taxpayer by certified mail or registered mail." However, it does not specify the address to which the notice must be directed in order to be sent "to the taxpayer." *Frieling v. Commissioner, supra* at 51. Those requirements are set forth in subsection (b), entitled "Address for Notice of Deficiency." Paragraph (1) of subsection (b) provides that the notice of deficiency "shall be sufficient" if it is mailed to the taxpayer at his "last known address." Congress enacted section 6212(b)(1) as a safe harbor that protects respondent by establishing a definite procedure for giving notice. *Frieling v. Commissioner, supra* at 52. Paragraph (2) of subsection (b), which must be read in pari materia with paragraph (1), modifies paragraph (1) by setting forth the address(es) which may be used for safe

harbor purposes in situations involving joint income tax returns. Generally, a single address may be used to provide notice to both spouses. However, where respondent has been notified that the spouses have separated, paragraph (2) provides that the joint notice must be sent to two addresses—the last known address of each spouse. Therefore, by mailing a joint notice of deficiency, respondent will satisfy subsection (a). However, his failure to mail a joint notice in the manner provided in subsection (b)(2) will violate the requirement that the notice be mailed to the taxpayer's "last known address." See *Davis v. Commissioner*, 661 F. Supp. 733 (M.D. Ala. 1987); *Grafton v. United States*, 563 F. Supp. 39 (W.D. Mo. 1983). Accordingly, we find that respondent, in an attempt to notify Ardythe of his deficiency determination, *issued* and *mailed* a joint notice of deficiency to her despite the fact that respondent failed to send a duplicate joint notice to Ardythe's last known address.[7] We now proceed to decide whether the improperly addressed notice is sufficient to provide us with jurisdiction over Ardythe.

## 2. *Timely Petition—Acquisition of Jurisdiction.*

We have held that the mailing of a notice of deficiency to a taxpayer's last known address under section 6212(b) is a safe harbor assuring respondent that the notice is valid for purposes of section 6212(a). *Frieling v. Commissioner, supra.* Consequently, a notice that is mailed to the taxpayer's last known address will toll the period for assessment even if the notice is not received by the taxpayer. *King v. Commissioner*, 857 F.2d 676, 681 (9th Cir. 1988), affg. on other grounds 88 T.C. 1042 (1987); *Wallin v. Commissioner*, 744 F.2d 674, 676 (9th Cir. 1984), revg. and remanding a Memorandum Opinion of this Court; *United States v. Zolla*, 724 F.2d 808, 810 (9th Cir. 1984); *DeWelles v. United States*, 378 F.2d 37, 39-40 (9th Cir. 1967); *Alta Sierra Vista, Inc. v. Commissioner*, 62 T.C. 367, 372 (1974), affd. without

---

[7]Even if we found that respondent failed to mail a deficiency notice to Ardythe, respondent would not necessarily be time-barred from issuing a new deficiency notice to Ardythe and possibly assessing and collecting any deficiency. Pursuant to sec. 6501(c)(2) respondent may assess and collect the additions to tax under sec. 6653(b) at any time in a case of a willful attempt to defeat or evade tax. See *Goodman v. Commissioner*, 71 T.C. 974, 978-979 (1979); see also sec. 6662(a). See also *supra* note 6 for a discussion on the effect of actual notice on the limitations period.

published opinion 538 F.2d 334 (9th Cir. 1976); *Lifter v. Commissioner*, 59 T.C. 818, 821 (1973).

In certain relatively unique circumstances, however, the mailing of a deficiency notice which is not addressed to the taxpayer's last known address may result in our acquisition of jurisdiction. In a limited but established line of cases, incorrectly addressed notices have resulted in our jurisdiction where the taxpayer receives "actual notice [of the contents of the deficiency notice] without prejudicial delay." *Clodfelter v. Commissioner*, 527 F.2d 754, 757 (9th Cir. 1975), affg. 57 T.C. 102 (1971); see also *McKay v. Commissioner*, 886 F.2d 1237 (9th Cir. 1989), affg. 89 T.C. 1063 (1987); *Frieling v. Commissioner, supra* at 51-53; *Goodman v. Commissioner*, 71 T.C. 974, 977-978 (1979); *Zaun v. Commissioner*, 62 T.C. 278 (1974); *Brzezinski v. Commissioner*, 23 T.C. 192, 195 (1954); *Commissioner v. Stewart*, 186 F.2d 239 (6th Cir. 1951), revg. a Memorandum Opinion of this Court. By providing the safe harbor of section 6212(b), Congress did not intend to invalidate actual rather than constructive methods of communicating respondent's determination. *McKay v. Commissioner*, 89 T.C. at 1068 n. 6. *Frieling v. Commissioner*, 81 T.C. at 53, contains a discussion of the "actual notice" principle, as follows:

The deficiency notices in those cases were held to be valid because they served the two functions of section 6212: (1) They notified the taxpayer that a deficiency had been determined against him; and (2) they gave the taxpayer the opportunity to petition this Court for redetermination of the proposed deficiency.

Both elements are satisfied here. Ardythe received actual notice of the deficiency and was aware of respondent's determination of deficiencies. Moreover, Ardythe filed her petition within 90 days after respondent mailed the notice of deficiency.

Petitioners acknowledge the line of cases holding that a notice not mailed to the taxpayer's last known address may be effective if the taxpayer receives actual notice and timely petitions this Court. Petitioners contend, however, that our opinion in *Abeles v. Commissioner, supra*, somehow modified these cases. We disagree. *Abeles* concerns the "safe-harbor" aspects of a "section 6212 mailing." To comport with respondent's improved computer capability, we set

forth "up-dated" guidelines for determining a taxpayer's last known address. The *Abeles* holding did not address situations where a taxpayer had actual notice of an incorrectly addressed notice and petitioned this Court. Our holding here is in accord with the opinion of the Court of Appeals for the Ninth Circuit in *Clodfelter v. Commissioner,* 527 F.2d at 757, which held that a notice of deficiency is valid if its mailing results in actual notice without prejudicial delay, *or* if the notice is mailed to the taxpayer's last known address.[8] The Court of Appeals for the Ninth Circuit held that:

in those cases where actual notice did not result or was not proved to have resulted from a mailing, or where delivery of mail was delayed to the prejudice of the petitioner in seeking redetermination, mailing to suffice under [section] 6212(b) must be to the last known address. We conclude, however, that if mailing results in actual notice without prejudicial delay (as clearly was the case here), it meets the conditions of [section] 6212(a) no matter to what address the notice successfully was sent. [Fn. ref. omitted.]

We, therefore, conclude that the notice of deficiency in the instant case is valid and that we have jurisdiction to consider the merits of this case.[9]

### Timeliness of Notice of Deficiency

Petitioners also argue that the 3-year period within which respondent may assess under section 6501(a) expired with respect to Ardythe's 1982 and 1983 tax years.[10] Petitioners rely upon the fact that Ardythe did not receive the deficiency notice until sometime in October 1987, more than 3 years after the returns for 1982 and 1983 were filed.

This argument was squarely addressed and rejected by this Court in *Frieling v. Commissioner,* 81 T.C. 42, 57 (1983). There, respondent mailed the deficiency notice before the limitations period expired. However, the notice was not

---

[8]The Court also acknowledged the existence of other methods of providing valid notice. *Clodfelter v. Commissioner,* 527 F.2d 754, 757 n. 7 (9th Cir. 1975), affg. 57 T.C. 102 (1971); see also *McKay v. Commissioner,* 89 T.C. at 1069 n. 7. Moreover, the Court of Appeals for the Ninth Circuit would be the appropriate venue for appeal of this case. See *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

[9]In retrospect, we should not feel sorry for Ardythe because it was Congress' intent to provide taxpayers with the ability to contest respondent's tax determination before assessment and payment. That is the result that has ultimately occurred.

[10]But see sec. 6501(c)(2) and *supra* note 7.

addressed to the taxpayers' last known address. Nonetheless, the taxpayers received the notice, but after 3 years from the date their returns were filed. The taxpayers argued that the notice did not become valid for any purpose until it was actually received by them, by which time the limitations period under section 6501(a) had expired. In dismissing this argument, we held as follows:

> Based on the express language of section 6503(a)(1), the Ninth Circuit's opinion in *Clodfelter,* and on the foregoing reasons, we hold that the mailing of the notice of deficiency, which complied with section 6212(a) [under the same reasoning we have applied here], which was received by petitioners, and in regard to which a timely petition was filed in this Court, tolled the period of limitations on the date the notice was mailed even though the notice was not sent to their last known address. Therefore, since the mailing date of that notice was the last day of the 3-year period under section 6501(a), a valid notice of deficiency was issued. [*Frieling v. Commissioner, supra* at 57; see also *Clodfelter v. Commissioner,* 527 F.2d at 757.]

We, accordingly, hold here that respondent's determination (statutory notice of deficiency) was timely communicated and that the period for assessment was tolled and has not expired.

### *Section 6653(b) Fraud Addition*

Respondent, by an amended answer, has asserted that petitioners are liable for the section 6653(b) addition to tax for fraudulently underpaying their income tax for 1982, 1983, and 1984. Respondent has alleged an addition under section 6653(b) in the alternative to additions under section 6653(a). Additions under both sections 6653(a) and 6653(b) are not permitted. See sec. 6653(b)(3). Section 6653(b) provides that if any part of the underpayment is due to fraud, there will be an addition to tax equal to 50 percent of the entire underpayment. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. *Powell v. Granquist,* 252 F.2d 56 (9th Cir. 1958); *Estate of Pittard v. Commissioner,* 69 T.C. 391 (1977).

Respondent has the burden of proving by clear and convincing evidence that an underpayment exists for the years in issue and that some portion of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b). To meet this burden,

respondent must show that petitioners intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. *Stoltzfus v. United States,* 398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); *Webb v. Commissioner,* 394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; *Rowlee v. Commissioner,* 80 T.C. 1111, 1123 (1983). Respondent need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for each year in issue is attributable to fraud. *Lee v. United States,* 466 F.2d 11, 16-17 (5th Cir. 1972); *Plunkett v. Commissioner,* 465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court.

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. *Gajewski v. Commissioner,* 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); *Estate of Pittard v. Commissioner, supra.* Fraud is not to be imputed or presumed, but rather must be established by some independent evidence of fraudulent intent. *Beaver v. Commissioner,* 55 T.C. 85, 92 (1970); *Otsuki v. Commissioner,* 53 T.C. 96 (1969). However, fraud may be proved by circumstantial evidence and reasonable inferences drawn from the facts because direct proof of the taxpayer's intent is rarely available. *Spies v. United States,* 317 U.S. 492 (1943); *Rowlee v. Commissioner, supra; Stephenson v. Commissioner,* 79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. *Stone v. Commissioner,* 56 T.C. 213, 223-224 (1971); *Otsuki v. Commissioner, supra* at 105-106. The intent to conceal or mislead may be inferred from a pattern of conduct. See *Spies v. United States, supra* at 499.

Courts have relied upon different indicia of fraud in considering section 6653(b) addition to tax cases. Although no single factor may be necessarily sufficient to establish fraud, the existence of several indicia may be persuasive circumstantial evidence of fraud. *Solomon v. Commissioner,* 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam a

Memorandum Opinion of this Court; *Beaver v. Commissioner, supra* at 93.

In *Bradford v. Commissioner,* 796 F.2d 303, 307 (9th Cir. 1986), affg. a Memorandum Opinion of this Court, the Ninth Circuit Court of Appeals utilized a nonexclusive list of circumstantial evidence which may give rise to a finding of fraudulent intent. Such "badges of fraud" would include: (1) Understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; and (6) failure to cooperate with tax authorities. The Court of Appeals for the Ninth Circuit in *Bradford* further stated that the existence of the following facts supported a finding of fraudulent intent: (1) The taxpayer's filing of false W-4's; and (2) his failure to make estimated tax payments.

The section 6653(b) addition to tax for fraud has been imposed in numerous circumstances where the taxpayer filed false Forms W-4 resulting in the under-withholding of their tax liabilities and then filed tax protestor returns or did not file any returns. See, e.g., *Castillo v. Commissioner,* 84 T.C. 405 (1985); *Hammers v. Commissioner,* T.C. Memo. 1988-167; *Guillory v. Commissioner,* T.C. Memo. 1986-290; *Clemens v. Commissioner,* T.C. Memo. 1986-146; *Diercks v. Commissioner,* T.C. Memo. 1985-611; *Bates v. Commissioner,* T.C. Memo. 1985-362; *Mitchell v. Commissioner,* T.C. Memo. 1985-239, affd. without published opinion 793 F.2d 1296 (7th Cir. 1986). In *Castillo v. Commissioner, supra,* the taxpayer failed to file tax returns for 4 consecutive years. Before the tax return for the first of these years was due, he filed a false Form W-4 claiming 18 withholding allowances. However, he was not entitled to more than 4 allowances. On two subsequent occasions, the taxpayer filed Forms W-4 claiming he was exempt from withholding. As a result of these claims, only minimal income tax was withheld for the 4 years at issue. Prior to his nonfiling, the taxpayer had a history of properly filing tax returns. Under those facts, the imposition of the section 6653(b) addition was upheld. The following discussion is helpful in understanding the rationale underlying the holding in *Castillo:*

Respondent has affirmatively shown various indicia of fraud. Petitioner did not file Federal income tax returns for the taxable years 1975, 1976,

1977, and 1978. While the failure to file tax returns, even over an extended period of time, does not per se establish fraud \* \* \* , the failure to file returns is persuasive circumstantial evidence of fraud. \* \* \* Further, when petitioner's failure to file returns for the taxable years 1975, 1976, 1977, and 1978 is viewed in light of his previous filing of Federal income tax returns for the taxable years 1964 through 1972 and 1974, petitioner's inaction weighs heavily against him.

\*       \*       \*       \*       \*       \*       \*

   Petitioner also filed false W-4 Forms to reduce or stop the withholding of Federal income taxes from his wages during the taxable years at issue. Such activities are indicative of an attempt to evade the payment of income taxes. \* \* \*
   Finally, where a taxpayer's failure to file is predicated on frivolous arguments and where respondent has shown substantial amounts of unreported income on which withholding has been reduced or prevented by the submission of false Form W-4 certificates, we have repeatedly held that fraud has been established by clear and convincing evidence justifying the addition to tax under section 6653(b). \* \* \* We reach the same conclusion in this case. \* \* \*
   [*Castillo v. Commissioner, supra* at 409-410. Citations omitted.]

   Respondent has satisfied his burden of proving that the underpayment of tax was due to fraud in this case. We find that petitioners intended to evade taxes which they knew they owed by conduct intended to conceal, mislead, and prevent the collection of taxes. We believe that petitioners, who were knowledgeable about their taxpaying responsibilities, consciously decided to unilaterally opt out of our system of taxation. See, e.g., *Stoltzfus v. Commissioner*, 398 F.2d 1002 (3d Cir. 1968); *Cirillo v. Commissioner*, 314 F.2d 478 (3d Cir. 1963), affg. in part and revg. in part a Memorandum Opinion of this Court; *Beaver v. Commissioner*, 55 T.C. 85 (1970); *Newman v. Commissioner*, T.C. Memo. 1984-416; *Young v. Commissioner*, T.C. Memo. 1983-604; *Watkins v. Commissioner*, T.C. Memo. 1983-603; *Fuhrmann v. Commissioner*, T.C. Memo. 1982-255. Petitioners filed four Forms W-4 in 1982 and 1983 in which they stated, under penalty of perjury, that they were exempt from withholding for the years at issue because they owed no tax for the prior year and expected to owe no tax for the current year. The filing of the Forms W-4 is an indicia of fraud because petitioners filed their 1981 tax return reflecting a tax liability of approximately $12,000 just prior to submitting the Forms W-4 to their employers. Moreover,

petitioners' income level was increasing during this period, further evidencing that their claim that they would owe no tax in 1982, 1983, and 1984 was an attempt to evade paying income tax. Ardythe testified that at the time of submitting the Forms W-4 she believed she and her husband would owe income tax for the years at issue.

In conjunction with their cessation of withholding tax, petitioners ceased filing tax returns. Petitioners continued with this deceptive behavior and only began filing returns again after being contacted by respondent. This malfeasance weighs heavily against petitioners, particularly when we consider that petitioners knew of their filing requirements and had a prior history of filing timely tax returns. We find that petitioners' failure to file returns, combined with their failure to have estimated taxes withheld by their employers, was a deliberate attempt to conceal their correct tax liability and to frustrate its collection.

Ardythe testified that they filed the false Forms W-4 because she was told by a "supervisor" that they had the option to pay their entire tax liability with their returns rather than through withholdings. We do not find Ardythe's testimony credible. Not only did petitioners fail to present the "supervisor" as a witness, but the wording of the Forms W-4 is clear and unambiguous, and does not suggest such a reading. Furthermore, the objective facts show that petitioners did not intend to voluntarily pay their tax with their returns, or at any other time. Most telling is petitioners' failure to file timely returns or to timely pay the tax until respondent began his investigation. Ardythe explained that their failure to file was due to Jacob's gambling habit during the years at issue which caused petitioners to have insufficient funds to pay their tax liability at the times the returns were due. Again, other than this self-serving testimony, petitioners failed to present any evidence to support this claim. Moreover, petitioner husband did not appear or testify at trial. Nevertheless, if petitioner's story were true, it is hard to understand why both petitioners would stop their employers from withholding their tax if they knew it was unlikely that funds would be available when the returns were to be filed. We find petitioner's explanations lacking in credibility. Even after failing to file returns, failing to pay

tax for 1982 and 1983, and after being assessed the section 6682 penalty for submitting false information with respect to the four Forms W-4, Ardythe demanded in a letter to respondent that he "instruct" and "direct" her employer to "obey" her Forms W-4 as they were submitted. This suggests that Ardythe, although her and her husband's scheme to conceal their tax liability was discovered and even though she knew she owed and would owe tax, had no intention of paying her income tax.

Petitioners also contend that they are somehow not liable for the section 6653(b) addition because they finally filed "honest" returns for the years at issue. It is well settled, however, that later repentant behavior does not absolve a taxpayer of his antecedent fraud. *Badaracco v. Commissioner,* 464 U.S. 386, 394 (1984); *George M. Still, Inc. v. Commissioner,* 19 T.C. 1072, 1077 (1953), affd. 218 F.2d 639 (2d Cir. 1955). Therefore, we believe that petitioners' filing of false Forms W-4, coupled with their failure to file timely income tax returns for 1982, 1983, and 1984, was an attempt to evade the payment of tax.

The evidence produced here clearly and convincingly establishes that petitioners are liable for the addition to tax under section 6653(b) for 1982, 1983, and 1984. Because the addition to tax under section 6653(b) applies, we do not consider respondent's alternative argument under section 6653(a).

To reflect the foregoing and concessions of the parties,

*Decision will be entered under Rule 155.*