PHILIP ROTH AND LINDA ROTH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Roth v. Commissioner
Docket Nos. 7791-90, 7792-90
United States Tax Court
T.C. Memo 1992-563; 1992 Tax Ct. Memo LEXIS 581; 64 T.C.M. (CCH) 872; September 23, 1992, Filed *581 Decision will be entered under Rule 155. For Petitioners: Michael Louis Minns and Helena Papadopoulos. For Respondent: Victoria Sherlock. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined that petitioner Philip Roth was liable for additions to tax for fraud under sections 6653(b)(1) and (2)[1] and 6661 as follows: Additions to Tax
Year
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
1982
$ 5,061
[1]
$ 2,335
1983
$ 8,349
[1]
$ 4,174
1984
$ 14,987
[1]
$ 7,493
1985
$ 8,620
[1]
$ 4,310
Respondent also determined that petitioner Linda Roth was liable for additions to tax for fraud under sections 6653(b)(1) and (2) and 6661 as follows: Additions to Tax
Year
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
1982
$ 5,061
[1]
$ 2,335
1983
$ 8,349
[1]
$ 4,174
*582 After concessions, [2] the issues to be decided are: 1. Whether Philip Roth is liable for additions to tax for fraud under section 6653(b)(1) and (2) for 1982 through 1985. We hold that he is. 2. Whether Linda Roth is liable for additions to tax for fraud under section 6653(b)(1) and (2) for 1983. We hold that she is. 3. Whether Philip Roth's tax debt for the years in issue was discharged by the bankruptcy court. We hold that we do not have jurisdiction to determine the dischargeability of petitioner's debt. FINDINGS OF FACT Philip Roth resided in Las Vegas, Nevada, and Linda Roth *583 resided in Omaha, Nebraska, when they filed their petitions. Petitioners were husband and wife during the years in issue and were divorced in November 1985. Philip Roth obtained a B.A. degree in psychology from the University of Nebraska at Omaha and served as an officer in the United States Air Force for 6 years. While in the military, Philip Roth received three air medals and the Distinguished Flying Cross for extraordinary achievement. During the years at issue, he was employed as a pilot first by Aloha Airlines and then by United Airlines. Linda Roth earned an associate degree of nursing from the University of Nebraska College of Medicine. In 1983, she worked as a nurse for Drs. McNamee and Morton in Honolulu, Hawaii. Petitioners reported income on joint Federal income tax returns which they filed from 1965 through 1981. In 1982, 1983, and 1985, Philip Roth filed false Forms W-4 with Aloha Airlines claiming exempt status. In 1985 he also filed a false Form W-4 with United Airlines claiming exempt status. No Federal income tax was withheld from wages paid to Philip Roth for 1982 through 1985. In 1983, Linda Roth filed a false Form W-4 with Drs. McNamee and Morton claiming *584 exempt status. Linda Roth relied on her father for financial advice during and after the years of her marriage to Philip Roth. Her father had always filed Federal income tax returns. During 1983, Linda Roth received $ 9,789.70 in wages from Drs. McNamee and Morton. In 1982, 1983, 1984, and 1985, Philip and Linda Roth received interest income of $ 184.11, $ 244.60, $ 145.86, and $ 3.24, respectively. During 1984, petitioners sold a residence and realized a capital gain of $ 18,887.57. Philip Roth requested that the proceeds of the sale, $ 31,570.97, be paid in cash. In 1984, Philip Roth earned $ 1,420 as a self-employed painter. Also during 1984, Philip Roth received rental income of $ 2,175. In 1982, Philip Roth purchased a book by Irwin Schiff, titled "How Anyone Can Stop Paying Income Tax". Philip Roth knew at the time that Schiff was a tax protester who had been convicted for failing to comply with the Federal tax system. He also read other tax protester materials which he obtained from Mr. Stinson, whom he believed to be Irwin Schiff's twin brother. Philip Roth purchased a copy of the Internal Revenue Code, went to a law library, and began researching cases and statutes. *585 In 1982, he stopped paying Federal income tax. On February 2, 1983, Philip Roth mailed a document to Aloha Airlines directing them not to disclose any information to the Internal Revenue Service (IRS) concerning him and included an attached Form W-4 which was marked exempt. On April 19, 1985, Philip Roth mailed a package of documents to Aloha Airlines and to the IRS in which he claimed that he was not required to pay income tax. Philip Roth purchased some of the materials included in the package from Stinson. Linda Roth was troubled by this position, but she did not file an individual Federal income tax return. In 1980 and 1981, Janelle A. Israel and Associates, Ltd., prepared petitioners' Federal income tax returns. Petitioners did not timely file income tax returns for the years in issue. On July 23, 1986, Philip Roth was notified by the IRS that he was under criminal investigation for the years at issue. On February 4, 1987, petitioners filed delinquent joint Federal income tax returns for 1982 and 1983. Philip Roth filed delinquent individual Federal income tax returns for 1984 and 1985 on February 4, 1987. Philip Roth was tried in June 1989 in the Federal District *586 Court of Hawaii for criminal tax evasion under section 7201 for 1983, 1984, and 1985 and for willful failure to file a return under section 7203 for 1982. He was acquitted. On November 29, 1989, Philip Roth filed a petition under chapter 7 of the Bankruptcy Code (11 U.S.C.). He was granted a discharge on March 12, 1990. The IRS did not object to the granting of a general discharge in the bankruptcy proceeding. OPINION 1. Additions to Tax for Fraud for Philip Roth
The first issue for decision is whether Philip Roth is liable for additions to tax for fraud under section 6653(b)(1) and (2) for taxable years 1982 through 1985. The existence of fraud is a question of fact to be determined from the entire record. Castillo v. Commissioner, 84 T.C. 405, 409 (1985). Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Akland v. Commissioner, 767 F.2d 618, 621 (9th Cir. 1985), affg. T.C. Memo. 1983-249; Castillo v. Commissioner, supra at 408. This standard is different in degree than the burden of proof *587 in a criminal case, and Philip Roth's acquittal in 1989 of criminal tax evasion and willful failure to file does not prevent us from finding him liable for civil fraud. Helvering v. Mitchell, 303 U.S. 391, 397 (1938). For purposes of section 6653(b), fraud is an intentional wrongdoing, Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958), or the intentional commission of an act or acts for the specific purpose of evading a tax believed to be owing. Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Niedringhaus v. Commissioner, 99 T.C.     (1992). Fraudulent intent may be inferred from circumstantial evidence. Akland v. Commissioner, supra at 621. Petitioner's entire course of conduct can be relied upon to establish fraudulent intent by circumstantial evidence. Laurins v. Commissioner, 889 F.2d 910, 913 (9th Cir. 1989), affg. Norman v. Commissioner, T.C. Memo. 1987-265. Among those factors to be considered are petitioner's *588 education and intelligence. Niedringhaus v. Commissioner, supra; Drobny v. Commissioner, 86 T.C. 1326, 1349 (1986). Courts have enumerated a number of "badges of fraud" which tend to establish fraud for purposes of section 6653(b). These include: (1) Understatement of income; (2) failure to cooperate with tax authorities; (3) failure to file tax returns; (4) filing false Forms W-4; and (5) lack of credibility of the taxpayer's testimony. Laurins v. Commissioner, supra at 913; Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Rowlee v. Commissioner, 80 T.C. 1111, 1125 (1983). In the instant case, Philip Roth received income from several sources beyond his wages as a pilot, including interest, capital gain from the sale of real property, self-employment income, and rental income. He reported none of this income until he was informed that he was under criminal investigation for tax evasion. Thus, he substantially understated his income. Philip Roth instructed Aloha Airlines in writing *589 not to cooperate with tax authorities on his behalf. Further, he conducted his personal financial affairs so as to obscure his true income. This is evidenced by his demand to be paid in cash when he sold a residence in 1984. We conclude that Philip Roth failed to cooperate with tax authorities. Philip Roth failed to timely file income tax returns for the years at issue. He also filed false Forms W-4 claiming exempt status. Philip Roth's testimony lacks credibility. He asserts that he did not believe that he owed tax. He stated that during the years at issue he believed numerous tax protester arguments. For instance, Philip Roth stated that he believed that the tax system "was voluntary, and * * * I chose not to volunteer." Indeed, he wrote in a letter mailed to the IRS on April 19, 1985: "the Internal Revenue Service is powerless to collect taxes from 'private' citizens WHEN NO 1040 INCOME TAX CONTRACT HAS BEEN FILED." Philip Roth maintains that he never intended to avoid paying tax. Rather, he contends he engaged in a course of research and study to determine if the Internal Revenue Code contained a requirement that he pay tax. He also asserts that during the years at *590 issue he believed that IRS forms did not conform to the requirements of the Paperwork Reduction Act of 1980, Pub. L. 96-511, 94 Stat. 2812, and as a result were invalid. In his 1985 letter, Philip Roth concluded that Federal income tax return forms "are 'bootleg' forms and may be ignored by the public without penalty." Philip Roth claims that during the years at issue he believed that Congress could only tax privileges, and his employment was a right, not a privilege. He therefore concluded that Congress could not tax him. He testified that he believed that "Realizing and receiving income or earnings is not a privilege that can be taxed." Philip Roth also claims that he was not a tax protester. He "simply wanted to satisfy himself that he was actually required to file and pay taxes." Petitioner's brief states: "Philip Roth was never a tax protestor. He never tried to 'convert' anyone to his views. He never blindly followed the tenets of the real tax protestors." We do not believe that one must seek to convert others to be considered a tax protester. Further, despite his claim of independence from the tax protester movement, Philip Roth admitted that portions of his *591 April 1985 letter were purchased from a tax protester. He also testified that he learned of the cases which he relied on from tax protesters. Many of the arguments he claims to have believed are typical tax protester arguments. We conclude that Philip Roth was a tax protester. This Court and others have long held that such tax-protester arguments are without merit. See Rowlee v. Commissioner, supra at 1119-1122, and cases cited therein. Philip Roth mailed a letter to the IRS stating that he refused to pay tax and providing his alleged reasons. However, in Rowlee v. Commissioner, supra at 1124, we held that the argument that telling the IRS of the refusal to pay tax bars a finding of fraud does not apply when the taxpayer only writes to the IRS about his intentions after he has been discovered. In this case, Philip Roth's letter was in reply to a request concerning his delinquent tax returns. Therefore, he cannot "avoid the consequences of his avowedly freely exercised disobedience." Id. (fn. ref. omitted). Philip Roth's college education and service as a decorated officer in the U.S. military strongly *592 indicate that he was capable of understanding his duty to file. See Halle v. Commissioner, 175 F.2d 500, 502-503 (2d Cir. 1949), affg. 7 T.C. 245 (1946) (sophistication of the taxpayer is relevant to determination of fraud). Philip Roth had consistently filed returns for at least the preceding 16 years and had a professional service prepare his tax returns for the 2 years immediately preceding the years at issue. Purported reliance upon frivolous tax protester arguments which have often been rejected by the courts can be evidence of fraud. See Castillo v. Commissioner, 84 T.C. 405, 410 (1985). Philip Roth's conduct clearly shows fraudulent intent. We conclude that his claimed reliance on tax protester-type arguments was a convenient excuse to evade taxes which he knew he owed. First, he failed to report substantial amounts of income. Second, he failed to cooperate with tax authorities by instructing his employer not to cooperate with tax authorities, and performing substantial financial transactions in cash. Third, he failed to timely file his tax returns. He filed returns only after *593 charges of criminal tax evasion for the years in issue were brought against him. Later repentant behavior does not absolve a taxpayer of his antecedent fraud. Badaracco v. Commissioner, 464 U.S. 386, 394 (1984); Miller v. Commissioner, 94 T.C. 316, 337 (1990). Fourth, he submitted false Forms W-4. Fifth and finally, we find that his testimony completely lacks credibility. We do not believe his claims that he, a college-educated, former U.S. military officer, would believe the assertions of a convicted criminal that citizens are not required to pay tax. Although Philip Roth says that he learned how to use a law library so that he might independently research the tax laws, he claims not to have understood the meaning of terms such as "dissenting" and "holding". As a result, he asserts that he relied upon a statement in the dissenting opinion in Spreckels Sugar Refining Co. v. McClain, 192 U.S. 397 (1904). However, there is no dissenting opinion. The statement he refers to is a quote of Judge Gray's dissenting opinion in the Third Circuit Court of Appeals. Id. at 416 *594 (quoting 113 F. 244, 247 (3d Cir. 1902)). Philip Roth's education, experience, and intelligence completely discredit his assertion that he sincerely believed that a U.S. citizen is not required to pay Federal income tax. Petitioners rely on Cheek v. United States, 498 U.S.    , 111 S. Ct. 604 (1991), in which the Supreme Court held that a person cannot be convicted of willful failure to file a tax return if he subjectively believes in good faith that the tax laws do not apply to him. The Court stated: In the end, the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunderstanding and belief submission, whether or not the claimed belief or misunderstanding is objectively reasonable. [Id. at    , 111 S. Ct. at 611.] We have held that the term "willfully", as used in section 7201, encompasses all of the elements of fraud which are envisioned in section 6653(b). Amos v. Commissioner, 43 T.C. 50, 55 (1964), affd. 360 F.2d 358 (4th Cir. 1965). *595 Therefore, the Cheek standard is appropriate in determining civil fraud under section 6653(b). Niedringhaus v. Commissioner, 99 T.C.    ,     (1992) (slip op. at 23-24). Petitioners point to Philip Roth's testimony as evidence of his beliefs. However, we need not accept self-serving testimony. Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). We find that Philip Roth was aware of his duty to file Federal income tax returns and to pay taxes upon earned wages, that his entire course of conduct when viewed in light of his education and intelligence establishes a fraudulent intent, that he did not have a good-faith belief that he was not required to file tax returns, report his income, or pay tax for the years at issue, and that respondent has clearly and convincingly shown that Philip Roth committed fraud. Accordingly, we sustain respondent's determination that Philip Roth is liable for additions to tax for fraud under section 6653(b)(1) and (2) for taxable years 1982 through *596 1985. 2. Additions to Tax for Fraud for Linda Roth
The second issue for decision is whether Linda Roth is liable for additions to tax for fraud under section 6653(b)(1) and (2) for taxable year 1983. As stated above, the burden of proof is on respondent. Sec. 7454(a); Rule 142(b). Fraud must be proved separately for each spouse. Sec. 6653(b)(3); Hicks Co. v. Commissioner, 56 T.C. 982, 1030 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Stone v. Commissioner, 56 T.C. 213, 227-228 (1971). For 16 years preceding the year at issue, petitioners filed joint returns. A return was not timely filed by petitioners for 1983. Linda Roth filed a false Form W-4 for 1983, and no tax was withheld from her wages. In 1987, petitioners filed a joint return for 1983. Linda Roth was aware that she and her husband earned income in 1983. She knew that they had filed returns for the previous 16 years. She knew that her father, on whom she relied for financial advice, had never failed to file a return. In addition, Linda Roth is capable and well educated. When she and Philip Roth divorced, she handled *597 her own finances. We find that Linda Roth knew she was required by law to file a tax return, yet ignored her obligation to do so. She earned wages in 1983, yet she failed to file a tax return. Further, she actively engaged in fraudulent conduct by filing a false Form W-4 herself. She knew at the time that this would result in no wages being withheld from her income. Linda Roth asserts she "could not have willfully attempted to defraud the Government because she had no dealings whatsoever with the Government." Individuals cannot simply claim that they have no connection with their Government and opt out of the tax system. Miller v. Commissioner, 94 T.C. 316, 335 (1990). She also claims that "her conduct in this matter was simply to trust her husband." However, she testified that she was troubled by her husband's position. Indeed, Philip Roth's obsession with not paying taxes was one of the reasons for their divorce. We do not believe that Linda Roth merely relied upon her husband to make all her financial decisions. We find that by failing to timely file a return and submitting a false Form W-4, she knowingly sought to evade income tax with *598 a fraudulent intent. We find that respondent has clearly and convincingly shown that Linda Roth committed fraud. Accordingly, we hold that Linda Roth is liable for the addition to tax for fraud under section 6653(b)(1) and (2) for 1983. 3. Jurisdiction to Determine Discharge of Debt
Philip Roth asks us to find that his debt has already been discharged by the bankruptcy court. The Tax Court's jurisdiction to consider tax matters depends on a notice of deficiency and a timely filed petition. Secs. 6212 and 6213; Rule 13. We have stated: In exercising our jurisdiction to redetermine deficiencies, we are without jurisdiction to "allow or disallow a claim against a debtor's estate * * * or to discharge taxes as a bankruptcy court might." Fotochrome, Inc. v. Commissioner, 57 T.C. 842, 847 (1972). In Graham [v. Commissioner, 75 T.C. 389 (1980)], when confronted with the identical argument, we held that we lacked "the requisite subject matter jurisdiction to decide whether the petitioner's deficiencies * * * were discharged in the bankruptcy proceeding." 75 T.C. at 399. Accordingly, we *599 are without subject matter jurisdiction and petitioners, if they wish a ruling on their dischargeability position, would be required to seek the jurisdiction of the bankruptcy court. [Neilson v. Commissioner, 94 T.C. 1, 9 (1990).] Consequently, this Court lacks subject matter jurisdiction and cannot rule on this issue. Accordingly, Decision will be entered under Rule 155.
Footnotes
1. Fifty percent of the interest computed on an amount to be determined for 1982, 1983, 1984, and 1985, respectively.↩
1. All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. Fifty percent of the interest computed on an amount to be determined for 1982 and 1983, respectively.↩
2. Respondent conceded additions to tax under sec. 6661 as applied to both petitioners, and under sec. 6653(b)(1) and (2)↩ for 1982 as applied to Linda Roth.