HENRY J. CARROLL AND PEGGY CARROLL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Carroll v. Commissioner
Docket No. 9004-93
United States Tax Court
T.C. Memo 1995-28; 1995 Tax Ct. Memo LEXIS 27; 69 T.C.M. (CCH) 1711; January 23, 1995, Filed *27 Decision will be entered under Rule 155. For petitioners: William Randolph Klein.
For respondent: Steve R. Johnson. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined deficiencies in and additions to petitioners' 1987 through 1991 Federal income tax as follows: Additions to Tax Income
I.R.C. Sec.
I.R.C. Sec. I.R.C. Sec.
I.R.C. Sec.
Year
Tax 6653(b) (1) 6653(b) (1) (A) [1]
6663 6661 1987
$ 27,218
--  $ 20,414
--  $ 6,805
1988
14,596
$ 10,947
--  --  3,649
1989
8,807
--  --  $ 12,750
--  1990
11,617
--  --  15,636
--  1991
6,575
--  --  18,910
--  Respondent made jeopardy assessments on December 5, 1992, in amounts less than the deficiencies determined for each of the taxable years. Because petitioners filed amended returns for 1990 and 1991 reporting additional tax due of $ 533 and $ 9,421, respectively, the amounts of the income tax deficiencies to be assessed (if respondent's determination *28 is fully sustained) would be in reduced amounts. After concessions of the parties, the issues remaining in controversy are whether petitioners have shown they are entitled to various claimed deductions and whether respondent has shown that petitioners are liable for the addition to tax for fraud in any of the taxable years in issue. FINDINGS OF FACT [1]
Petitioners, who were married at all pertinent times, resided in Orlando, Florida, at the time their petition was filed in this case. Petitioners associate themselves with a certain group of people alternately known as the Irish Travelers, Irish Wanderers, or Irish Gypsies. They are descendants of several generations of immigrants from England, Scotland, and Ireland who were part of an association of similarly situated people who traveled and met on a regular basis for social and community events, such as weddings. Petitioner Henry J. Carroll is relatively illiterate, having *29 finished only 5 years of primary education. Petitioner Peggy Carroll is able to read. During the years under consideration, Mr. Carroll was self-employed and engaged as an itinerant, performing house painting and lightning prevention (i.e., the installation of lightning rods or devices to protect residences from lightning). He had learned these skills from his father. Mr. Carroll is fully capable of conducting his business and calculates estimates for his work for jobs sometimes exceeding $ 10,000. Mr. Carroll is required to make proposals or bids on jobs, sometimes using a calculator in his business activity. He performed his work in various parts of Florida and in other States, including Pennsylvania, Ohio, New York, California, Texas, and Georgia. He would generally travel alone by automobile, leaving his family in a permanent location. While traveling he sent part of his earnings to his family and spent part on meals and lodging. He was generally away from home more than one-half the year, and incurred costs for food, lodging, and gasoline. Mr. Carroll occasionally traveled by airplane and used at least one truck each year exclusively for business. For the taxable years *30 1987 through 1991, Mr. Carroll used the following trucks for business purposes: In 1987, a 1985 Chevrolet truck; in 1988, a 1988 Dodge truck; in 1989, a 1989 Ford truck; in 1990, a 1990 Chevrolet truck; and in 1991, a 1991 Ford truck. For the taxable years 1987 through 1991, petitioners filed timely joint Federal income tax returns reflecting gross income from contracting of $ 26,544, $ 26,970, $ 29,797, $ 30,922, and $ 30,410, respectively. Petitioners did not maintain books and records for the tax years under consideration, but had their returns professionally prepared. Petitioners' 1987 through 1990 returns were prepared by Stuart Anderson based upon information provided by petitioners. Petitioners' 1991 return was prepared by W.E. Haas again based on information provided by petitioners. Without the aid of books and records, the information petitioners provided to their income tax return preparers was based on their own estimates. Petitioners claimed (and respondent disallowed for failure to substantiate) the following categories of deductions on their Schedules C: Item 1987
1988
1989
1990
1991
Car & truck
$ 3,596
$ 3,712
$ 4,213
$ 4,421
$ 4,350
Insurance
441
441
566
589
625
Legal & prof.
75
75
110
100
100
Office
21
36
32
30
35
Repairs
637
729
809
671
649
Supplies
120
126
132
148
155
Taxes
264
302
312
544
565
Travel
--
--
--
1,624
1,700
Meals & entertain
--
810
978
1,056
290
Food & lodging
3,412
2,310
1,877
--
--
Utilities & tel.
156
164
144
212
215
Advertising
--
--
--
--
15
Equipment rental
--
--
--
--
75
Labor
--
--
--
--
200
Total claimed
8,722
8,705
9,173
9,395
8,974
*31 Petitioners also claimed costs of goods sold for 1987 through 1991 in the amounts of $ 8,809, $ 9,101, $ 10,120, $ 10,306, and $ 9,450, respectively, which, respondent now agrees, are proper. During 1987, Mr. Carroll acquired a one-half interest in a mobile home park in Citrus County, Florida, known as "Big Pine Acres Mobile Park". The other one-half interest was owned by Patrick Rafferty (Mr. Rafferty). Respondent's agents examined Mr. Rafferty's income tax returns, and, as a result, examined petitioners' returns. Petitioners, on December 18, 1992, and following the audit of Mr. Rafferty's returns, reported, using a return preparer, additional gross income in their 1989, 1990, and 1991 amended returns in the amounts of $ 28,501, $ 31,620, and $ 63,163, respectively. The additional income reported by petitioners was attributable to the operation of the mobile home park. The amended returns were prepared based upon information supplied by petitioners. Initially, respondent reconstructed petitioners' income by means of the source and application of funds method, which resulted in the determination that petitioners' taxable income for the years 1987 through 1991 was understated *32 in the amounts of $ 69,453, $ 32,663, $ 10,358, $ 20,278, and $ 3,273, respectively. Petitioners now agree that gross income in their original income tax returns for 1987 through 1991 was understated in the amounts of $ 67,765, $ 31,112, $ 32,293, $ 39,155, and $ 54,770, respectively. Petitioners maintained a savings account that was opened in 1988 and closed in 1991. The balance of that account did not exceed $ 5,000. Petitioners did not maintain any other bank accounts and generally transacted their business and personal financial matters by means of cash and cashier's checks. In one transaction with the same individual, Mr. Carroll paid with four different cashier's checks in amounts ranging from $ 1,900 to $ 3,000, and each of the four checks was obtained from a different bank. It was also customary for Mr. Carroll to be paid cash by customers. Mr. Carroll used at least four different Social Security numbers and driver's licenses issued by four different States, including a Virginia driver's license with a number that had been issued to a person other than Mr. Carroll. In a November 16, 1991, application for credit, Mr. Carroll represented that his "SALARY OR WAGES" was *33 "50,000+". In reconstructing petitioners' income, respondent's agents used the source and application of funds method. Respondent's agent discovered that petitioners invested $ 31,374, $ 19,205, $ 4,519, and $ 4,119 in the mobile home park during 1987, 1988, 1989, and 1990, respectively. Respondent also ascertained that petitioners spent the following amounts on the purchase of motor vehicles during the years in issue: Vehicle
1987
1988
1989
1990
1991
1985 Chevrolet truck
[1] $ 7,700
--
--
--
--
1988 Jaguar
[1] 43,000
--
--
--
--
1988 Dodge truck
--
[1] $ 11,677
$ 2,484
$ 2,484
$ 2,484
1989 Ford van
--
11,225
2,700
[1] 9,172
--
1989 Ford truck
--
[1] 14,700
--
--
--
1990 Chevrolet truck
--
--
[1] 15,583
--
--
1990 Vagabond trailer
--
--
--
[1] 10,500
--
1991 Ford Explorer
--
--
--
[1] 26,297
12,692
1991 Chevrolet truck
--
--
--
[1] 18,000
--
1991 Chevrolet truck
--
--
--
--
10,598
1991 Ford trucks (2)
--
--
--
--
26,509
1992 GMC Jimmy
--
--
--
--
20,949
1992 Mercedes Benz
--
--
--
--
29,300
*34 OPINION The parties have resolved all issues with the exception of whether petitioners are entitled to any of the disallowed deductions claimed on Schedules C of their returns and whether respondent has shown that petitioners are liable for additions to tax for fraud. We will first consider whether petitioners are entitled to any of the disputed deductions. Petitioners bear the burden of proving that they are entitled to the deductions disallowed by respondent. Rule 142(a); [2]Welch v. Helvering, 290 U.S. 111 (1933). The deductions claimed by petitioners must be divided into two different categories because of the different standards of proof. Travel and entertainment expenses (T&E) are subject to the more stringent requirements of section 274(d). The largest portion of the amounts claimed by petitioners concern T&E, as follows: Item
1987
1988
1989
1990
1991
Car & truck
$ 3,596
$ 3,712
$ 4,213
$ 4,421
$ 4,350
Travel
--
--
--
1,624
1,700
Meals &
entertainment
--
810
978
1,056
290
Food & lodging
3,412
2,310
1,877
--
--
Subject to
sec. 274
7,008
6,832
7,068
7,101
6,340
Insurance
441
441
566
589
625
Legal & prof.
75
75
110
100
100
Office
21
36
32
30
35
Repairs
637
729
809
671
649
Supplies
120
126
132
148
155
Taxes
264
302
312
544
565
Utilities & tel.
156
164
144
212
215
Advertising
--
--
--
--
15
Equipment rental
--
--
--
--
75
Labor
--
--
--
--
200
Not subject to
sec. 274
1,714
1,873
2,105
2,294
2,634
Total claimed
8,722
8,705
9,173
9,395
8,974
*35 With respect to the T&E expenses, respondent makes the following two-pronged argument: (1) No portion of such claimed expenses is deductible because petitioners failed to meet the more stringent record-keeping requirements of section 274(d), and (2) even though petitioners purchased numerous cars and trucks, they have not shown their business use. Concerning the section 274 aspect, we agree with respondent. No deduction is permitted under section 274(d) "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating * * * [his or her] own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment * * * (C) the business purpose of the expense * * * and (D) the business relationship to the taxpayer of persons entertained". Sec. 274(d)(4). *36 Although it is most probable that Mr. Carroll incurred expenses for travel, meals, and lodging which would otherwise be deductible, Congress has precluded us from estimating the amounts based solely upon petitioners' uncorroborated testimony. Dowell v. United States, 522 F.2d 708, 712 (5th Cir. 1975); Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). Our hands are tied as to these matters in accord with the congressional design in enacting section 274(d). See H. Rept. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 427; S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 741; sec. 1.274-5(a), Income Tax Regs.
The evidence in this case is abundantly clear, however, that Mr. Carroll used at least one of petitioners' numerous vehicles exclusively in his contracting business. See, e.g., Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 744 (1973); Wollesen v. Commissioner, T.C. Memo. 1987-611, affd. without published *37 opinion 875 F.2d 317 (4th Cir. 1989). Accordingly, we hold that petitioners are entitled to a section 168 5-year class life property depreciation deduction for one truck in each taxable year as follows: For 1987, a 1985 Chevrolet truck; for 1988, a 1988 Dodge truck; for 1989, a 1989 Ford truck; for 1990, a 1990 Chevrolet truck; and for 1991, a 1991 Ford truck; the costs of which are documented in the record. Respondent agrees that the remaining claimed deductions are not subject to the requirements of section 274. However, petitioners' failure to keep adequate records is of their own doing and militates against their efforts to prove that these expenditures were made and are deductible. Based on the record, however, we do find that there is sufficient evidence to hold that petitioners are entitled to deduct $ 1,200 in each of the taxable years 1987 through 1991 for expenses incurred in operating the contracting business. Cohan v. Commissioner, 39 F.2d 540, 543 (2d Cir. 1930). Finally, we consider the additions to tax for fraud. Respondent determined that each underpayment of tax was due to fraud under the statute applicable *38 for each taxable year: sections 6653(b)(1), 6653(b)(1)(A) and (B), and 6663. Sections 6653(b)(1) and 6653(b)(1)(A) provide that, if any part of the underpayment is due to fraud, there will be an addition to tax on the entire underpayment. The additions to tax under sections 6653(b)(2), 6653(b)(1)(B), and 6663, however, apply only to that portion of the underpayment attributable to fraud. Respondent's burden of proving fraud is the same for all taxable years -- by clear and convincing evidence. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Miller v. Commissioner, 94 T.C. 316, 332 (1990) (citing Powell v. Granquist, 252 F.2d 56 (9th Cir. 1958)). Respondent has the burden of proving, by clear and convincing evidence, that an underpayment exists for the years in issue and that some portion of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b). To meet this burden, respondent must show that petitioners intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); *39 Webb v. Commissioner, 394 F.2d 366, 378 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Respondent need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for each year in issue is attributable to fraud. Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274. Petitioners concede that there was unreported income and resulting underpayments for each of the years in issue. We accordingly must decide whether the underpayments were due to fraud. Hebrank v. Commissioner, 81 T.C. 640 (1983). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Estate of Pittard v. Commissioner, 69 T.C. 391 (1977). *40 Fraud is not to be imputed or presumed, but rather must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, 53 T.C. 96 (1969). Fraud may not be found under "circumstances which at the most create only suspicion." Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950), affg. a Memorandum Opinion of this Court; Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). However, fraud may be proved by circumstantial evidence and reasonably inferred from the facts, because direct proof of a taxpayer's intent is rarely available. Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, supra; Stephenson v. Commissioner, 79 T.C. 995 (1982), affd. per curiam 748 F.2d 331 (6th Cir. 1984). A taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); *41 Otsuki v. Commissioner, supra at 105-106. The intent to conceal or mislead may be inferred from a pattern of conduct. See Spies v. United States, supra at 499. Courts have relied on several indicia of fraud in considering the section 6653(b) addition to tax cases. Although no single factor may conclusively establish fraud, the existence of several indicia may be persuasive circumstantial evidence. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603; Beaver v. Commissioner, supra at 93. Circumstantial evidence that may give rise to a finding of fraudulent intent includes: (1) Understatement of income; (2) inadequate or no records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with tax authorities; (7) filing false Forms W-4; (8) failure to make estimated tax payments; (9) dealing in cash; (10) engaging in illegal activity; and (11) attempting to conceal an illegal activity. *42 Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; see Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990). These "badges of fraud" are nonexclusive. Miller v. Commissioner, supra at 334. Both the taxpayer's background and the context of the events in question may be considered as circumstantial evidence of fraud. United States v. Murdock, 290 U.S. 389, 395 (1933); Spies v. United States, supra at 497; Plunkett v. Commissioner, supra at 303. The record before us provides us with a basis for finding that the entire underpayment of tax for 1987, 1988, 1989, 1990, and 1991 is due to fraud. The substantial underreported income in each year is most conspicuous here with petitioners agreeing that the gross income in their original income tax returns for 1987 through 1991 was understated in the amounts of $ 67,765, $ 31,112, $ 32,293, $ 39,155, and $ 54,770, respectively. The frequency and relative magnitude of the agreed *43 underreported gross income is probative evidence which supports our finding that the understatements of income were fraudulent, rather than accidental or inadvertent. In the same vein, petitioners' expenditures (applications of funds) as determined by respondent did not comport with the amount of income being reported. These differences are specifically evidenced by the expenditures for motor vehicles and the investment in the mobile home park. To a lesser degree, we have also taken cognizance of respondent's estimation of petitioners' living expenses. Although expenditures disproportionate to reported income alone would not be of decisive import, when coupled with the other indicia in this record, they acquire greater probative value. Petitioners' failure to maintain records and the estimates of income and expenses they provided to their tax return preparers, at the very least, indicate that their returns could not be accurate. Petitioners argue that they were either illiterate or lacked the professional discipline to keep books, yet we note that they were savvy enough to seek the assistance of tax return preparers in filing their 1987 through 1991 income tax returns. More *44 significantly, when considering that petitioners conducted their business activity and made personal purchases by means of cash, that currency transactions were structured to avoid reporting or evidence of their existence, that multiple Federal and State identification was utilized, including the possibility of a counterfeit driver's license, petitioners' failure to maintain records becomes part of a pattern of activity conceived to conceal their business activity and income. We have also considered, to some extent, the fact that Mr. Carroll's application for a loan reflected annual wages earned far in excess of the amounts reported on the returns in question. Finally, we found parts of Mr. Carroll's testimony to lack both substance and credibility. For example, Mr. Carroll's stated reasons for using multiple cashier's checks were less than candid. At the forefront of the arguments against the additions to tax for fraud, petitioners have asserted that they were without books and records, that their return preparers had failed them, and that they are not educated people. Respondent has clearly and convincingly shown that petitioners filed their 1987 through 1991 income tax returns *45 with the intent to defraud. Therefore, petitioners' arguments must fail. To reflect the foregoing and account for concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. Under I.R.C. sec. 6653(b) (1) (B)↩, respondent determined that petitioners were liable for 50 percent of the interest due on a deficiency up to $ 27,218 that may be redetermined.
1. The parties' stipulations of facts and exhibits are incorporated by this reference.↩
1. Denotes vehicles that were used as trade-ins toward the purchase of another of the above-listed vehicles. Petitioners did insure some of the above-listed vehicles.↩
2. All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue, unless otherwise indicated.↩