T.C. Memo. 1995-563


UNITED STATES TAX COURT


ROBIN F. AND ANNE F. JENKINS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 25085-93.     Filed November 28, 1995.


Robin F. and Anne F. Jenkins, pro sese.

<u>Lindsey D. Stellwagen</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


JACOBS, <u>Judge</u>:     Respondent determined the following

deficiencies in and additions to petitioners' Federal income taxes:

| | | Additions to Tax | | | | |
|---|---|---|---|---|---|---|
| | | Sec. | Sec. | Sec. | Sec. | Sec. |
| <u>Year</u> | <u>Deficiency</u> | <u>6653(b)(1)</u> | <u>6653(b)(1)(A)</u> | <u>6653(b)(2)</u> | <u>6653(b)(1)(B)</u> | <u>6661</u> |
| 1984 | $12,454 | $6,347 | -- | * | -- | $3,114 |
| 1985 | 13,007 | 6,504 | -- | * | -- | 3,252 |
| 1986 | 22,442 | -- | $16,832 | -- | * | 4,773 |

* 50 percent of the interest due on the deficiency.

In the alternative to the additions to tax pursuant to section 6653(b)(1) and (2) for 1984 and 1985, respondent determined the negligence additions to tax pursuant to section 6653(a)(1) in the respective amounts of $623 and $650, and under section 6653(a)(2), in the respective amounts of 50 percent of the interest due on $12,454 and $13,007.  In the alternative to the additions to tax under section 6653(b)(1)(A) and (B) for 1986, respondent determined a $1,122 addition to tax under section 6653(a)(1)(A), and an addition to tax under section 6653(a)(1)(B) in the amount of 50 percent of the interest due on $22,442.

All section references are to the Internal Revenue Code in effect for the years under consideration.  All Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether petitioners underreported their income and overstated Schedule C deductions for 1984, 1985, and 1986, as determined by respondent; (2) whether petitioners are liable for the additions to tax for fraud pursuant to section 6653(b) for 1984, 1985, and 1986; or in the alternative, whether petitioners are liable for the additions to tax for negligence pursuant to section 6653(a); (3) whether petitioners are liable for the additions to tax for substantial understatements of income tax pursuant to section 6661 for 1984, 1985, and 1986; and (4) whether the statute of limitations bars respondent's assessment and collection of petitioners' Federal income taxes.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Background

Petitioners, husband and wife, resided in Sterling, Virginia, at the time they filed their petition. They timely filed joint Federal income tax returns for 1984, 1985, and 1986, the years under consideration. Respondent mailed petitioners a notice of deficiency with respect to all years under consideration on August 26, 1993.

Robin F. Jenkins (hereinafter referred to in the singular as petitioner) obtained a high school diploma and completed one year of college. While in college, petitioner studied wildlife biology; he did not take any tax or accounting courses. He left college and became a mason by trade. During the years under consideration, petitioner was self-employed; he owned and operated a business known as Field Masonry.

Anne F. Jenkins (Mrs. Jenkins) also graduated from high school and completed one semester of college study. She did not take any tax or accounting classes.

Audit

Respondent's revenue agent, Kathleen Bellamy (Ms. Bellamy), was assigned to audit petitioners' Federal income tax returns for the years under consideration. Ms. Bellamy first met petitioners

in December 1987 at their residence. She began the audit by examining petitioners' bank deposits in order to identify possible unreported income. Ms. Bellamy examined deposit slips, petitioner's business records, and the records of some of the vendors with whom petitioner dealt. Ms. Bellamy discovered that substantial amounts of income were omitted from, and deductions were improperly claimed on, petitioners' 1984, 1985, and 1986 income tax returns.

## Petitioner's Brown Books

During their first meeting, Ms. Bellamy questioned petitioner about his business books and records; he told her that there were no books to examine. Subsequently, petitioner provided her with bank statements, canceled checks, a bag of invoices, and sheets of notebook paper containing unexplained figures.

In point of fact, petitioner used "brown books" to record income and profit, and to compile summary sheets of his Field Masonry business activities. The brown books were also used to calculate the amount of petitioners' annual charitable contributions.

One of respondent's special agents accompanied Ms. Bellamy to petitioners' home for a second meeting regarding possible criminal violations. At that time, petitioner provided the agents with one of his brown books from a year prior to the years under consideration and showed them how he computed his income. Petitioner told them that the brown books and summary sheets for

the years under consideration had been destroyed because he had given them to his children to color on. He also expressed his belief that records more than 3 years old should be destroyed.

Because of the possible criminal violations, petitioners retained a lawyer. Their lawyer had possession of the brown books for the years under consideration. The brown books were ultimately turned over to respondent's special agent who provided them to Ms. Bellamy.

Tax Return Preparation

Petitioner prepared petitioners' tax returns for the years under consideration. Mrs. Jenkins did not participate in the completion of the returns. Petitioners paid no income tax for 1982, 1983, 1985, and 1986; they paid $240 in income tax for 1984.

Ms. Bellamy primarily used the bank deposit analysis (and then made modifications as additional information was provided) to identify petitioners' unreported Schedule C income for 1984, 1985, and 1986. Petitioner did not report all of his gross receipts from his Field Masonry business.

When the audit began, petitioner wrote a $25,000 personal check, payable to the Internal Revenue Service, and gave it to Ms. Bellamy because he was certain that petitioners had underreported their income and owed at least that amount.

a. 1984 Joint Federal Income Tax Return

Petitioners claimed, among others, the following expenses as Schedule C deductions on their 1984 return:

```
Advertising...................$416
Dues and publications......... 111
Legal and professional ....... 919
Office expense................ 432
Travel and entertainment...... 693
Utilities and telephone....... 611
Work clothes.................. 473
Security guard................ 183
```

Petitioners could not substantiate the advertising expense. Under the category dues and publications, petitioners deducted the dues paid to petitioners' homeowners association, and amounts paid for the disposal of household trash. The legal and professional expense was for a $50 stuffed deerhead that petitioner gave to an accountant for preparing petitioners' 1979 income tax return, and $869 of family doctor bills. Petitioners deducted, as office expense, $198 for cassette tapes and a tape player. They deducted a $500 color television set and a family trip to Williamsburg, Virginia, as travel and entertainment. Petitioners deducted home utility bills under the utilities and telephone category, and a portion of the deduction was allowed by respondent. Under the category of work clothes, petitioners deducted personal clothing purchased by petitioner during 1984. The security guard expense consisted of dog food and a license for the family dog. In addition to these Schedule C deductions, petitioners deducted $382, which was paid for hazard insurance on their home, as a Schedule A medical and dental expense.

b.  1985 Joint Federal Income Tax Return

Petitioners claimed, among others, the following expenses as Schedule C deductions on their 1985 return:

```
Advertising...........................$  496
Travel and entertainment...............  324
Supplies............................... 2,249
Utilities and telephone................  588
```

The advertising expense consisted of two deerheads, which were worth approximately $200 apiece. The travel and entertainment expenses consisted of fireworks, fishing, and motel costs. Under supplies, petitioners deducted a $1,575 video camera purchased for both personal and business use, and deducted the costs of utilities and telephone used at their residence. Petitioners also deducted $379 for dog food, veterinary bills, and a chain for their dog.

### c.  1986 Joint Federal Income Tax Return

Petitioners claimed, among others, the following expenses as Schedule C deductions on their 1986 return:

```
Employee benefit program..............$ 3,356
Mortgage interest.................... 14,277
Supplies.............................  5,365
Security guard.......................    682
Contributions........................ 11,567
```

Petitioners could not substantiate the supplies deduction. The security guard expense represented a fence erected to house petitioners' family dog. The employee benefit program deduction consisted of family doctor and medical expenses. Petitioners deducted $14,277 for home mortgage interest as a business expense. The contribution deduction represented petitioners' charitable contributions. Petitioners also claimed a $1,588 jobs credit on their 1986 Schedule C.

In prior years, petitioners deducted their medical, home mortgage interest, and charitable contribution expenses as Schedule

A itemized deductions rather than Schedule C deductions. Petitioner deducted the aforementioned expenses on Schedule C of their 1986 return because Schedule C provided them with greater tax savings.

Respondent determined that petitioners underreported their income during each of the years in issue by: (1) Underreporting petitioner's masonry business receipts; (2) inflating business deductions; and (3) changing Schedule A deductions to Schedule C expenses.

1985 Loan Application

In 1985, petitioner applied for a loan at the First American Savings and Loan Association (First American). On the application form, petitioner listed his income as $4,000 a month. He listed $118 of monthly inheritance interest, and reported cash assets of approximately $40,000. The inheritance interest income was not reported on petitioners' Federal income tax returns for the years under consideration. Petitioners' 1983 and 1984 tax returns were attached to the bank loan application. First American denied petitioner a loan.

Petitioner wrote a letter to First American following the denial of the loan. In the letter, he provided First American with profit information for the first eight months of 1985. He reported gross profit of $57,566 and net profit of $36,788. Petitioner obtained these figures using his brown books.

Tithing

During the years under consideration, petitioners made charitable contributions based on tithing. They tithed approximately 10 percent of petitioner's annual profits to their church. Petitioner determined the amount to be tithed each year by using his brown books.

Ms. Bellamy met with petitioners after she had completed a bank deposit analysis and reconstructed petitioners' expenses for each of the years under consideration. During this meeting, Ms. Bellamy asked petitioners to review her calculations to see if they agreed with the income and expense figures. Petitioner suggested that if Ms. Bellamy's figures matched petitioners' tithing, he would agree with her numbers. He asked Ms. Bellamy to calculate 10 percent of the amount she determined as his gross profit. Ms. Bellamy did so, and the result was close to the amount petitioners tithed. Petitioner agreed with the agent's income analysis. He told the agent that he always computed gross profit accurately for tithing because "I'd never cheat the Lord."

OPINION

Issue 1. Unreported Income

Every individual liable for tax is required to maintain books and records sufficient to establish the amount of his or her gross income. Sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Where a taxpayer fails to

maintain or produce adequate books and records, the Commissioner is authorized to compute the taxpayer's taxable income by any method that clearly reflects income. Sec. 446(b); Holland v. United States, 348 U.S. 121 (1954); Webb v. Commissioner, 394 F.2d 366, 371-372 (5th Cir. 1968), affg. T.C. Memo. 1966-81. The reconstruction of income need only be reasonable in light of all surrounding facts and circumstances. Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). The Commissioner is given latitude in determining which method of reconstruction to apply when a taxpayer fails to maintain records. Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989).

For the years under consideration herein, petitioner maintained inadequate books and records. As a result, respondent was required primarily to use the bank deposit method to reconstruct petitioners' income. "The bank deposit method assumes that all money deposited in a taxpayer's bank account during a given period constitutes taxable income." DiLeo v. Commissioner, 96 T.C. at 868. Bank deposits are prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). In analyzing a bank deposits case, deposits are considered income when there is no evidence that they represent anything other than income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964); United States v. Doyle, 234 F.2d 788, 793 (7th Cir. 1956).

Because petitioners used a modified accrual accounting method, Ms. Bellamy used the same method to calculate petitioners' income. She reconstructed petitioners' income and expenses using the information she possessed.

Petitioners failed to present evidence to refute respondent's income determinations and to substantiate the deductions claimed. In contrast, respondent has established that the underpayments determined in the statutory notice of deficiency are correct. Accordingly, we sustain respondent's determination both as to the amounts of unreported income and the denial of Schedule C deductions for each of the years under consideration.

Issue 2.  Fraud Additions to Tax

Respondent determined that petitioners are liable for the additions to tax for fraud under section 6653(b)(1) and (2) for 1984 and 1985 and under section 6653(b)(1)(A) and (B) for 1986.

For 1984 and 1985, section 6653(b)(1) provides that if any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. Section 6653(b)(2) provides for additional interest with respect to the portion of underpayment attributable to fraud.  For 1986, section 6653(b)(1)(A) imposes an addition to tax equal to 75 percent of the portion of the underpayment which is attributable to fraud, and section

6653(b)(1)(B) provides for additional interest on the portion of the underpayment attributable to fraud.

Under section 6653(b)(1), applicable to 1984 and 1985, if respondent proves that any part of the underpayment is attributable to fraud, the addition to tax imposed by that section applies to the entire underpayment, regardless of whether petitioners show that some part of the underpayment is not attributable to fraud. Sec. 6653(b)(1). Under section 6653(b)(1)(A) and (B), applicable to 1986, if respondent establishes that any portion of an underpayment is attributable to fraud, the entire underpayment is to be treated as attributable to fraud, except with respect to any portion of the underpayment that petitioners establish is not attributable to fraud. Sec. 6653(b)(2).

Fraud is intentional wrongdoing on the part of the taxpayer with the specific purpose to evade a tax believed to be owing. McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). To support fraud, respondent has the burden of proving, by clear and convincing evidence, that petitioners have an underpayment for each year, and that some part of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b); Katz v. Commissioner, 90 T.C. 1130, 1143 (1988); Otsuki v Commissioner, 53 T.C. 96, 105 (1969). This burden is met if respondent shows that petitioners intended to evade taxes known to be owing by conduct intended to conceal income, mislead, or otherwise prevent the collection of

taxes. <u>Stoltzfus v. United States</u>, 398 F.2d 1002, 1004 (3rd Cir. 1968); <u>Rowlee v. Commissioner</u>, 80 T.C. 1111, 1123 (1983).

For purposes of the fraud addition, an underpayment of taxes can be accomplished by an overstatement of deductions as well as by an omission of income. <u>Estate of Temple v. Commissioner</u>, 67 T.C. 143, 161 (1976). Petitioners failed to report substantial amounts of Schedule C income. Further, they inflated business deductions by deducting practically everything they purchased (except food) as a Schedule C expense. In addition, they manipulated income and expenses to evade self-employment tax. Thus, respondent has proven, by clear and convincing evidence, that an underpayment of tax existed with respect to each of the years under consideration.

Next, respondent must prove that a portion of such underpayment was due to fraud. <u>Professional Services v. Commissioner</u>, 79 T.C. 888, 930 (1982). Fraud is never presumed, but must be affirmatively established by clear and convincing evidence. <u>Beaver v. Commissioner</u>, 55 T.C. 85, 92 (1970). Because direct evidence of fraud is rarely available, fraud may be proved by circumstantial evidence. <u>Spies v. United States</u>, 317 U.S. 492, 499 (1943). The existence of fraud is a factual question to be determined upon a consideration of the entire record. <u>Grosshandler v. Commissioner</u>, 75 T.C. 1, 19 (1980); <u>Gajewski v. Commissioner</u>, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). However, the mere failure to report income is not

sufficient to establish fraud.  <u>Merritt v. Commissioner</u>, 301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-172.

The courts have listed several indicia or "badges of fraud" from which fraudulent intent can be inferred.  These include: (1) Understating income; (2) inadequate books and records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with tax authorities; (7) engaging in illegal activities; (8) an intent to mislead which may be inferred from a pattern of conduct; (9) lack of credibility of the taxpayer's testimony; and (10) dealings in cash.  <u>Bradford v. Commissioner</u>, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; <u>Recklitis v. Commissioner</u>, 91 T.C. 874, 910 (1988); <u>Grosshandler v. Commissioner</u>, <u>supra</u> at 20. These "badges of fraud" are nonexclusive.  <u>Miller v. Commissioner</u>, 94 T.C. 316, 334 (1990).  Although no single factor is necessarily sufficient to establish fraud, the combination of a number of factors constitutes persuasive evidence.  <u>Solomon v. Commissioner</u>, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603.  The taxpayer's background and the context of the events in question may be considered as circumstantial evidence of fraud. <u>Spies v. United States</u>, <u>supra</u> at 497. The sophistication, education, and intelligence of the taxpayer also are relevant to this determination.  <u>Halle v. Commissioner</u>, 175 F.2d 500, 503 (2d

Cir. 1949), affg. 7 T.C. 245 (1946); <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 211 (1992).

Fraud cannot be imputed from one spouse to another. In the case of a joint return, section 6653(b)(4) (for taxable years 1984 and 1985) and section 6653(b)(3) (for taxable year 1986) provide that section 6653(b) shall not apply with respect to a spouse unless some part of the underpayment is due to fraud by such spouse. Hence, respondent must prove fraud as to each spouse charged with liability for the addition to tax. <u>Hicks Co. v. Commissioner</u>, 56 T.C. 982, 1030 (1971), affd. 470 F.2d 87 (1st Cir. 1972); <u>Stone v. Commissioner</u>, 56 T.C. 213, 227-228 (1971). We shall first address whether any part of the underpayment for the years under consideration is due to petitioner's fraud.

a. Petitioner

Petitioner claims that the understatements and deductions on the returns for the years under consideration were not fraudulent, but rather resulted from his honest mistakes. He claims that mistakes were made because he thought every expense was deductible and that the IRS audited all returns and corrected any inaccurate items listed on the returns. We find petitioner's claim to be self-serving and, at least in part, incredible.

Respondent has affirmatively established numerous badges of fraudulent intent by petitioner as follows:

(1)  Understatements of Income

Consistent understatement of income with consequent underpayment of taxes may be strong evidence of fraudulent intent to evade taxes.  Patton v. Commissioner, 799 F.2d 166, 171 (5th Cir. 1986), affg. T.C. Memo. 1985-148.

Petitioner considered himself to be a successful and sophisticated businessman.  He operated Field Masonry prudently by filing appropriate tax forms for each of his employees, and presented himself at trial as a knowledgeable and competent individual.  Nevertheless, he exhibited a pattern of substantially understating petitioners' 1984, 1985, and 1986 income.  Also, petitioner chose to deduct all personal and business expenses.  Personal expenses are not deductible.  Sec. 262.  A practice of claiming personal expenses as business expenses has been held to justify the imposition of the fraud addition to tax.  See, e.g., Hicks Co. v. Commissioner, 56 T.C. 982, 1030 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Ramsey v. Commissioner, T.C. Memo. 1984-251.  By attempting to convert nondeductible personal expenses into deductible business expenses, petitioner fraudulently understated petitioners' Federal income taxes for the years under consideration through an overstatement of deductions.  See Hicks Co. v. Commissioner, supra at 1019.

Petitioner also excluded gross receipts and interest income for each of the years under consideration. He deliberately moved Schedule A itemized deductions to Schedule C for increased tax benefits. In fact, he offered Ms. Bellamy a $25,000 check, payable to the IRS, at their first meeting because he was sure that petitioners had understated income. Moreover, petitioners paid no income tax in 1985 and 1986, and only paid $240 in 1984. Thus, respondent has proven that petitioner consistently understated and underpaid petitioners' income tax for each year.

(2) Inadequate Books and Records

Failure to maintain adequate books and records may be an indicium of fraud. Grosshandler v. Commissioner, supra at 20. Petitioner's brown books were inadequate. He was unable to use his brown books or other records to substantiate any of petitioners' expenses. At trial, he attempted to defend many of the claimed Schedule C deductions. However, he did not keep any contemporaneous records to substantiate the expenses. Petitioner could not substantiate the expenses relating to the family trip to Williamsburg, Virginia, the color television set, the family dog expenses, the work clothes deduction, family medical bills, or the household trash and utilities expenses. Petitioner did not maintain adequate books and records during 1984, 1985, and 1986.

(3)  Inconsistent Explanations of Behavior

Petitioner testified that he used his brown books to calculate petitioners' annual charitable contributions.  He also claimed that he used the brown books to prepare petitioners' tax returns.  The figures on the returns, however, did not match the figures in the books.  Petitioner asked Ms. Bellamy to take her figures and calculate 10 percent of his gross profit for each year under consideration. Petitioner agreed that Ms. Bellamy's income analysis was correct because 10 percent of the gross profit calculated from Ms. Bellamy's figures approximated petitioners' tithing.  We conclude that although petitioner used his brown books to calculate petitioners' tithing, he chose not to use them when he prepared petitioners' Federal income tax returns.

The brown books also were used to complete a 1985 bank loan application.  The figures reported on the application were inconsistent with the figures petitioner listed on petitioners' 1985 Federal income tax return.  Petitioner was denied the loan based on the application, which included petitioners' 1983 and 1984 income tax returns.  In a letter written to the bank, he tried to explain why the reported income was so low by informing the bank that he had a $36,788 profit during the first 8 months of 1985.  He used his brown books to compute these figures.  Subsequently, he reported no taxable income on the 1985 return.  Thus, petitioner's

behavior concerning his calculation of tithing and in reporting petitioners' income on the bank loan application was inconsistent with the reporting of petitioners' income on the tax returns for the years under consideration.

(4) <u>Intent to Mislead</u>

Misleading statements to an investigating agent may be evidence of fraud. See <u>Gajewski v. Commissioner</u>, 67 T.C. 181, 200 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Petitioner misled Ms. Bellamy when he provided her with details of his income. During the audit, Ms. Bellamy indicated to petitioner the importance of obtaining all relevant information so that she could reconstruct petitioners' income. Petitioner refused to permit Ms. Bellamy to review petitioners' 1983 Federal income tax return.

Petitioner claims that petitioners provided Ms. Bellamy with the brown books for the years under consideration at the first audit meeting, and that she took the books with her and later returned them. He further contends that his preparation of a mileage log, completed during the audit and at Ms. Bellamy's recommendation, is proof that the brown books were handed over to her. But he later claimed that the brown books were destroyed by his children, and expressed a belief that it was useless to keep records for longer than 3 years. It took almost 2 years before Ms.

Bellamy was given an opportunity to review photocopies of the 1984, 1985, and 1986 brown books, which were provided to her through petitioners' counsel. We conclude that petitioner did not turn the brown books over to Ms. Bellamy as asserted, and that he intended to mislead Ms. Bellamy by withholding this information.

(5)  Lack of Credibility of Petitioner's Testimony

A taxpayer's lack of credibility, inconsistent testimony, or evasiveness are factors in considering the fraud issue. Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25. Portions of petitioner's testimony were not credible. For example, petitioner accused Ms. Bellamy of manufacturing a portion of his 1985 First American bank loan application. Furthermore, he testified that Ms. Bellamy did not adequately inform petitioners about the statute of limitations extension period, and that she lied about her handling of the brown books. We disbelieve petitioner's accusations.

(6)  Failure to Cooperate with Tax Authorities

A failure to cooperate with tax authorities is further proof of fraud. Rowlee v. Commissioner, 80 T.C. 1111, 1125 (1983). Petitioner admitted that he was not cooperative with Ms. Bellamy during one of their audit meetings, and that he once held a grudge against the IRS. At the second audit meeting, in which a special agent accompanied Ms. Bellamy to petitioners' home, petitioner

showed them a brown book from a year not under consideration and explained how he calculated his income. Petitioner was uncooperative and evasive when asked to produce the brown books for the years under consideration. He was not able to explain the numbers on his summary sheets, and stated that he could not read his own writing.

To summarize, the evidence in this case shows, clearly and convincingly, that the entire underpayment for 1984, 1985, and 1986 is due to petitioner's fraud. Thus, we sustain respondent's determination that petitioner is liable for the additions to tax under section 6653(b) for 1984, 1985, and 1986. We now turn to whether any part of the underpayment for the years under consideration is due to Mrs. Jenkins' fraud.

### b. Mrs. Jenkins

Mrs. Jenkins' testimony was not fully credible. Her support of petitioner's claim that petitioner provided Ms. Bellamy with the brown books for the years under consideration demonstrates that part of her testimony was not plausible. We have found that petitioner never provided Ms. Bellamy with the brown books. Nonetheless, we are not inclined to hold that Mrs. Jenkins committed fraud based solely on her lack of credibility. As previously stated, fraud is never presumed; even if the taxpayer's testimony is not credible in all respects, we may still be left

with no more than a suspicion of fraud. Rinehart v. Commissioner, T.C. Memo. 1983-184. We will not sustain respondent's finding of fraud when we are only left with a suspicion of fraud. Green v. Commissioner, 66 T.C. 538, 550 (1976); see Comparato v. Commissioner, T.C. Memo. 1993-52.

The record contains no evidence to indicate that Mrs. Jenkins was involved in petitioner's Field Masonry business. Respondent failed to show that Mrs. Jenkins was responsible for understating income, for maintaining petitioner's brown books, or that she was in any way involved in claiming the unsubstantiated deductions. Also, respondent produced no evidence to show that Mrs. Jenkins concealed assets, was engaged in illegal activities, or had dealings in cash. Petitioner completed petitioners' 1984, 1985, and 1986 tax returns by himself. Mrs. Jenkins signed the returns without glancing at any of the reported figures.

Respondent has not affirmatively established by clear and convincing evidence that Mrs. Jenkins intended to evade taxes. We cannot conclude on this record that Mrs. Jenkins committed fraud, where respondent has failed to adduce evidence showing intentional wrongdoing.

We now turn to whether petitioners are liable for additions to tax for negligence under section 6653(a).

Issue 3.  Negligence Additions to Tax

Petitioner and Mrs. Jenkins filed joint Federal income tax returns for the years under consideration.  The liability for additions to tax for taxpayers who file jointly is joint and several.  Sec. 6013(d)(3); Pesch v. Commissioner, 78 T.C. 100, 129 (1982).  As previously stated, fraud must be proved for each spouse individually.  But negligence additions are imposed jointly and severally.

We held above that petitioner is liable for the additions to tax for fraud for all years under consideration.  If we were to hold Mrs. Jenkins liable for the negligence additions to tax for such years, petitioner would then be jointly and severally liable for such addition.  But a taxpayer cannot be liable for the addition to tax for fraud and also the addition to tax for negligence.  Sec. 6653(b).  See Minter v. Commissioner, T.C. Memo. 1991-448; Congelliere v. Commissioner, T.C. Memo. 1990-265.  Therefore, having found petitioner liable for fraud under section 6653(b) for each year under consideration, we cannot hold Mrs. Jenkins liable for negligence under section 6653(a) on the same underpayments.

Issue 4. Substantial Understatement Additions to Tax

The next issue is whether petitioners are liable for the additions to tax for substantial understatements of income tax pursuant to section 6661 for the years in issue. Section 6661(a) imposes an addition to tax on any underpayment attributable to a substantial understatement of income tax. An understatement of income tax is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. The section 6661 addition to tax is 25 percent of the underpayment attributable to such understatement. The understatement is reduced if it is based on substantial authority or is adequately disclosed on the return or in a statement attached to the return.

With respect to the additions to tax under section 6661, the burden of proof is on petitioners. Rule 142(a); King's Court Mobile Home Park v. Commissioner, 98 T.C. 511, 517 (1992). Petitioners presented no evidence showing that they did not substantially understate their income taxes. Their understatements for the years in issue were neither based on substantial authority nor adequately disclosed on their returns or in a statement attached to their returns. Accordingly, we sustain respondent's determination as to these additions to tax.

Issue 5. Statute of Limitations

The final issue is whether respondent is barred by the statute of limitations from assessing and collecting petitioners' Federal income taxes for the years under consideration.

As a general rule, the Commissioner must determine a deficiency within 3 years after a return is filed. Sec. 6501(a). The statute of limitations is suspended by respondent mailing the notice of deficiency. Sec. 6503(a)(1). Here, respondent's notice of deficiency was mailed to petitioners on August 26, 1993, more than the 3 years after the returns were filed. However, section 6501(c)(1) provides an exception to the general rule. It permits respondent to assess a deficiency at any time if the taxpayer files a fraudulent return. Based on our holding that petitioner fraudulently filed petitioners' Federal income tax returns for each of the years under consideration, section 6501(c)(1) extends the period of limitations for each year. Thus, the notice of deficiency is timely.

To reflect the foregoing,

Decision will be entered under Rule 155.