T.C. Memo. 1997-477


UNITED STATES TAX COURT


DAVID DOBRICH AND NAOMI DOBRICH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 3832-95, 7382-96.        Filed October 20, 1997.


<u>John M. Youngquist</u> and <u>Donald L. Feurzeig</u>, for petitioners.

<u>Daniel J. Parent</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' 1989 and 1990 Federal income tax in the amounts of
$1,111,292 and $1,111,320, respectively, and section 6663(a)[1]

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code for the years in issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

civil fraud penalties for 1989 and 1990 of $833,469 and $833,490, respectively. Respondent determined the income tax deficiency and penalty in the alternative for 1989 or 1990.

The issues for our consideration are: (1) Whether petitioners may defer recognition of gain from the disposition of certain real property under section 1031, (2) if the transaction does not qualify for section 1031 exchange, whether petitioners are entitled to report the gain in 1990 under the installment sale method, and (3) whether petitioners are liable for a fraud penalty under section 6663.

FINDINGS OF FACT[2]

At the time the petitions in this case were filed, petitioners resided in Danville, California. Petitioners are married and filed joint Federal income tax returns for each of the years in issue.

During the years in issue, petitioners engaged in real estate investment and received rental income from commercial and residential real estate. In 1977, petitioners purchased 137 acres of unimproved real property located in Antioch, California (Antioch property), for $300,000 and thereafter spent $30,000 in engineering and consulting fees to improve the property. In 1988, petitioners decided to sell a portion of the Antioch

---

[2] The stipulation of facts and the attached exhibits are incorporated herein by this reference.

property to an unrelated third party and granted an option to purchase 117 acres of the property for $3,969,000, to expire on August 22, 1989. Petitioners intended to dispose of the property in a section 1031 exchange for like-kind property to obtain nonrecognition treatment of the gain realized. They knew that they had a limited time period after the sale closed to replace the Antioch property with like-kind property and had to identify replacement property within 45 days.

Petitioners entered into an agreement with Clack Brothers, Inc. (Clack Bros.), to act as an intermediary to facilitate a like-kind exchange of the Antioch property purportedly in accordance with section 1031 (exchange agreement). Timothy Clack (Mr. Clack), the president of Clack Bros., is a real estate attorney and had represented petitioners in real estate transactions since the 1970's. Pursuant to the exchange agreement, petitioners assigned the right to receive the Antioch option proceeds to Clack Bros. On August 22, 1989, the option holder exercised the option to purchase the Antioch property. Petitioners transferred the title of the Antioch property to the purchaser without Clack Bros.' acquiring legal title. The purchaser paid the $3,969,000 purchase price into an escrow account by August 22, 1989. Clack Bros. thereafter transferred $3,862,339.65 of the proceeds into an interest-bearing trust account in its name and used the remainder for a deposit on

replacement property chosen by petitioners. Petitioners paid a portion of the interest earned on the sale proceeds to Clack Bros. as a fee and retained the remainder of the sale proceeds interest.

The exchange agreement provided that petitioners would be entitled to the sales proceeds if they did not identify replacement property within 45 days of the transfer of the Antioch property. If petitioners did identify replacement property, they would have a right to the sales proceeds if they did not acquire replacement property within 180 days of the transfer, pursuant to the exchange agreement. A letter attached to the exchange agreement also informed petitioners of the 45-day identification period. The 45th day after the transfer was October 6, 1989, and the 180th day was in February 1990.

Petitioners began looking for replacement property in 1988. They considered numerous potential replacement properties and met with several real estate agents. In connection with the properties they considered, petitioners examined various information about the properties, such as building plans, income and expense statements, tenant lists, leases, rents, service and maintenance contracts on the property, and warranties, in order to analyze the investment opportunity of the properties. Petitioners expressed an interest in a number of replacement properties during the identification period. They offered to

purchase several different properties, entered into purchase agreements, and had Clack Bros. make earnest money deposits using the sales proceeds from the Antioch property.  However, petitioners did not acquire any of these properties.  After the identification period had expired, petitioners continued to search for possible replacement properties and continued to make unsuccessful offers as late as December 1989.  In January 1990, petitioners made offers to purchase two parcels of real property: 2001 Contra Costa Boulevard, Pleasant Hill, California, (Pleasant Hill) and 1032 Skyland Drive, Zephyr Cove, Nevada (Skyland). Petitioners acquired these properties in February 1990 using the sales proceeds from the Antioch property.

Petitioners purchased the Pleasant Hill property from a partnership in which Daniel Fivey was a general partner.  The partnership began construction of a retail shopping center on the property in mid-1989 and completed construction in February 1990. The Pleasant Hill property had not been listed for sale with any real estate brokers.  Petitioner husband had previously discussed another possible replacement property with Mr. Fivey in mid-1989. During the course of the discussions, Mr. Fivey mentioned the Pleasant Hill property, which was still under construction and not available for sale.  Petitioner husband did not ask Mr. Fivey for a tour of the property or for any information about the property.  Petitioners did not express any interest in purchasing

Pleasant Hill, or otherwise identify Pleasant Hill as replacement property, at that time or at any time prior to January 1990.

On January 11, 1990, one of petitioners' real estate agents Kevin Van Voorhis (Mr. Van Voorhis) told petitioner husband that the Pleasant Hill property was for sale. This was the first time petitioners had discussed Pleasant Hill with Mr. Van Voorhis, and petitioner husband did not indicate to Mr. Van Voorhis that he was familiar with the property. Mr. Van Voorhis informed petitioner husband that Pleasant Hill could not be part of a section 1031 exchange for the Antioch property because it was not identified within the 45-day identification period. On January 26, 1990, petitioners offered to purchase Pleasant Hill for $3,100,000 and entered into a purchase contract. Petitioners assigned the purchase contract to Clack Bros., and the purchase closed on February 15, 1990. The purchase price was paid by Clack Bros. from the Antioch sales proceeds. Petitioners negotiated the purchase of Pleasant Hills themselves and paid Mr. Van Voorhis a finder's fee of $31,000.

Petitioners also looked for residential rental property in the Lake Tahoe, Nevada, area in 1988 and used Sandra Love (Ms. Love) as their real estate agent. On October 12, 1989, after the identification period had expired, petitioners first expressed an interest in the Skyland property to Ms. Love. They had toured Skyland that day with another real estate agent but wanted Ms.

Love to handle the purchase. The Skyland property contains a waterfront, single-family residence. The house was constructed during the summer of 1989 and first advertised for sale in June 1989 while under construction. Ms. Love had not previously discussed the Skyland property with petitioners or shown the property to them. Petitioners did not indicate to Ms. Love that they had seen the house prior to October 12, 1989. The next day, October 13, 1989, petitioners made a verbal offer for the Skyland property, which they later decided to withdraw. On October 13, 1989, Ms. Love also contacted Mr. Clack, at petitioners' request, to identify Skyland as replacement property.

After the initial offer, petitioners did not express any further interest in purchasing Skyland again until January 24, 1990, when they called Ms. Love to inquire as to whether the Skyland property was still for sale. On January 26, 1990, petitioners offered to purchase the Skyland property for $1,200,000 and entered into a purchase contract. Petitioners assigned the purchase contract to Clack Bros., and the purchase price was paid by Clack Bros. from the sales proceeds of the Antioch property. The purchase closed on February 15, 1990.

Petitioners regularly discussed the 45-day identification requirement with Mr. Clack and with several real estate agents whom petitioners employed. Mr. Clack repeatedly advised petitioners to obtain documentation to establish that they had

identified replacement property within the 45-day period. Mr. Clack recommended that petitioners purchase replacement property that had been identified during the 45-day period. Real estate agents also gave petitioners similar advice, including Mr. Van Voorhis who recommended that a written identification be furnished to Mr. Clack as the exchange intermediary. In September 1989, Mr. Van Voorhis offered to write a letter to Mr. Clack that identified replacement properties that petitioners were considering (Van Voorhis letter). Mr. Van Voorhis asked petitioners which properties to include in the letter and also included properties that Mr. Van Voorhis had shown to them. Petitioners did not inform Mr. Van Voorhis that they were interested in either the Skyland or Pleasant Hill properties in his preparation of this letter. The letter, dated September 18, 1989, identified 10 potential replacement properties and did not include either the Pleasant Hill or Skyland properties. Despite this advice, petitioners did not identify either Pleasant Hill or Skyland in writing or obtain other written documentation. Moreover, petitioners did not discuss purchasing either the Pleasant Hill or Skyland property with Mr. Clack, any of their real estate agents, or the prior owners of the properties during the 45-day period.

In January 1990, petitioner husband asked Ms. Love to write a false letter (Skyland letter) addressed to petitioners

purporting to acknowledge that petitioners had expressed an interest in purchasing the Skyland property to her as of September 1989. The letter was backdated to September 19, 1989, on petitioner husband's request to misrepresent the time by which Skyland was identified as replacement property. The letter also incorrectly stated that petitioners had made a verbal offer to purchase the property on that date. At petitioners' direction, Ms. Love also changed the date of petitioners' offer for the Skyland property from January 26, 1990, to a September date. Petitioners and Ms. Love also re-dated the purchase contract to September 19, 1989. In January 1990, petitioner husband also asked Mr. Fivey to write a similar letter to fabricate an interest in the Pleasant Hill property during the identification period (Pleasant Hill letter). The letter, backdated to September 15, 1989, purported to acknowledge petitioner husband's interest in acquiring Pleasant Hill.

In late October 1989, after the identification period had expired, petitioner husband had suggested that documents be backdated in connection with another property that petitioners were considering but did not acquire. Petitioners offered to purchase this property, and the purchase offer was backdated to be within the identification period. On January 8, 1990, petitioners received a sample letter from Mr. Clack that was used to prepare the back dated Pleasant Hill and Skyland letters. The

sample letter was dated September 5, 1989, and addressed to petitioner husband.  Petitioners received this sample letter before they expressed an interest in acquiring either Pleasant Hill or Skyland to Mr. Clack.

In January 1990, petitioner husband also wrote a letter to Mr. Clack which purported to identify five possible replacement properties, including the Pleasant Hill and Skyland properties. Petitioner husband backdated the letter to September 18, 1989, the date of the Van Voorhis letter identifying potential replacement property.

Petitioners reported the transfer of the Antioch property on their 1990 tax return as a section 1031 exchange qualifying for nonrecognition of gain and reported that they identified replacement property on September 18, 1989.  Respondent determined that the transaction did not qualify as a section 1031 exchange because petitioners did not timely identify the replacement property.  Accordingly, respondent determined that petitioners must report the gain realized on the Antioch property.

Petitioners' accountant relied on the false letters solicited by petitioner husband from Ms. Love and Mr. Fivey to prepare petitioners' 1989 and 1990 tax returns.  Petitioners indicated to their accountant that they exchanged the Antioch property pursuant to section 1031 and that the replacement

properties had been identified within the 45-day identification period.  During the audit of their tax returns, petitioners' accountant provided to respondent's revenue agent a copy of the backdated letter that petitioner husband wrote to Mr. Clack identifying the Pleasant Hill and Skyland properties.  Mr. Fivey sent the Pleasant Hill letter to the revenue agent.  Pursuant to a written plea agreement with the U.S. Department of Justice, petitioner husband pleaded guilty to two counts of violating section 7207 for causing the delivery of false documents to the Internal Revenue Service (IRS).

Petitioners extended the period of limitations to assess and collect tax for 1989 and 1990 to December 31, 1994, pursuant to section 6501(c)(4).  Respondent timely issued a notice of deficiency for 1989 and issued a notice of deficiency for 1990 on April 12, 1996.

### OPINION

Generally a taxpayer must recognize the entire amount of gain or loss on the sale or exchange of property.  Sec. 1001(c). Section 1031(a)(1) allows taxpayers to defer gain or loss from exchanges of like-kind property held for business or investment purposes, as distinguished from a cash sale of property followed by a reinvestment of the proceeds in other property.  Barker v. Commissioner, 74 T.C. 555, 561 (1980).  Section 1031(a)(3) governs nonsimultaneous like-kind exchanges.  To qualify as a

nonsimultaneous like-kind exchange, the taxpayer must identify replacement property to be received in the exchange within 45 days after the date the taxpayer transfers the property relinquished in the exchange. Sec. 1031(a)(3)(A). In this case, the 45-day period ended on October 6, 1989.

The parties dispute whether petitioners timely identified either the Pleasant Hill or Skyland properties as replacement properties. Petitioners contend that they discussed Pleasant Hill and Skyland with each other during the identification period. Petitioners further allege that they drove by the properties while under construction and that petitioner husband toured the construction site and inquired about building plans with construction workers. Petitioners concede that they never indicated that they were interested in acquiring Pleasant Hill or Skyland to the prior owners of either property, their exchange intermediary/attorney, Mr. Clack, or any of their numerous real estate agents. Petitioners contend that identification of replacement property to each other was sufficient to meet the identification requirement of section 1031(a)(3)(A). Respondent contends that petitioners did not consider purchasing Pleasant Hill or Skyland during the identification period, and even if they did, petitioners did not adequately identify either property.

Section 1031(a)(3) provides:

For purposes of this subsection, any property received by the taxpayer shall be treated as property which is not like-kind property if--

(A) such property is not identified as property to be received in the exchange on or before the day which is 45 days after the date on which the taxpayer transfers the property relinquished in the exchange, or

(B) such property is received after the earlier of--

(i) the day which is 180 days after the date on which the taxpayer transfers the property relinquished in the exchange, or

(ii) the due date (determined with regard to extension) for the transferor's return of the tax imposed by this chapter for the taxable year in which the transfer of the relinquished property occurs.

The Secretary issued regulations under section 1031 after the years in issue which require taxpayers to identify replacement property in a written document signed by the taxpayer and sent to either (1) the person obligated to transfer the replacement property or (2) any person involved in the exchange (e.g., a party, an intermediary, or an escrow agent) other than the taxpayer or a disqualified person (the taxpayer's agent or a related party). Sec. 1.1031(k)-1(c)(2), Income Tax Regs. The regulations apply to transfers of property made on or after June 10, 1991, or in limited cases, transfers made on or after May 16, 1990. Sec. 1.1031(k)-1(o), Income Tax Regs.

As the regulations do not apply in this case, petitioners contend that during the years in issue, the proper method of identification was ambiguous. They argue that section

1031(a)(3)(A) does not expressly require written identification or specify to whom identification must be made. Petitioners also argue that the legislative history for section 1031(a)(3) does not clarify the required method of identifying replacement property. The conference report provides

> The conference agreement follows the Senate amendment except that transferors are permitted 45 days after the transfer to designate the property to be received * * *. The conferees note that the designation requirement in the conference agreement may be met by designating the property to be received in the contract between the parties. It is anticipated that the designation requirement will be satisfied if the contract between the parties specifies a limited number of properties that may be transferred and the particular property to be transferred will be determined by contingencies beyond the control of both parties. * * * [H. Conf. Rept. 98-861, at 866 (1984), 1984-3 C.B. (Vol. 2) 1, 120.]

Congress' primary concern in amending section 1031(a)(3) was to prevent long periods of delay between the exchange of properties, as occurred in Starker v. United States, 602 F.2d 1341 (9th Cir. 1979). H. Conf. Rept. 98-861, supra, 1984-3 C.B. at 120. Congress added the 45- and 180-day requirements for like-kind exchanges to address this concern.

It is not necessary for us to decide whether identification must be in writing. Rather, we must decide whether the steps taken by petitioners were sufficient. Petitioners have no credible evidence that they had considered Pleasant Hill or

Skyland as replacement properties during the identification period. During that period, petitioners did not inform anyone, either verbally or in writing, that they were interested in either property. Petitioners first expressed an interest in acquiring Pleasant Hill in January 1990 when the property was brought to their attention by Mr. Van Voorhis. Petitioner husband may have briefly discussed Pleasant Hill with Mr. Fivey during the identification period. However, petitioner husband concedes that he did not indicate to Mr. Fivey any intention to acquire Pleasant Hill as replacement property until after the identification period had expired. Petitioners first indicated their interest in the Skyland property on October 12, 1989. Petitioners claim that they drove by the house with a real estate agent in the summer of 1989 while it was under construction. They did not express an interest in purchasing Skyland at that time. They also contend that they drove by both properties by themselves on several occasions and that petitioner husband viewed the construction site.

However, there is no evidence, other than their testimony, that petitioners considered purchasing these properties or expressed an interest in the properties during the identification period. Throughout the end of 1989, petitioners made a number of offers and entered into purchase contracts on other properties as replacements for the Antioch property, including an offer in

December 1989.  Petitioners claim that by October 6, 1989, they had decided to purchase Pleasant Hill and Skyland.  However, they rely solely on their own testimony in that regard.  Apart from their testimony there is no evidence that they saw the Skyland property before October 12, 1989 or the Pleasant Hill property before January of 1990.  Even if they had seen either property on the dates alleged, that would likely not be sufficient to meet the identification requirement.

Although petitioners are not specifically educated in tax matters, they are sophisticated real estate investors. Petitioners repeatedly discussed the identification requirement with their advisers and were advised as to the adequate measures of identification.  We find that petitioners understood the importance of timely identification.  Indeed, they asked Ms. Love to identify Skyland to Mr. Clack when they made a verbal offer. Nevertheless, they never disclosed their alleged interest in the Pleasant Hill or Skyland properties during the identification period to anyone, not to Mr. Clack, their real estate agents, or the prior owners.  Petitioners failed to mention either property to Mr. Van Voorhis in September 1989 when Mr. Van Voorhis prepared an identification letter to Mr. Clack.  Moreover, petitioner husband did not indicate any prior interest in Pleasant Hill and acted as if he were unfamiliar with the property when Mr. Van Voorhis first approached him about it.  As

petitioners knew and understood the need to timely identify replacement property, it is highly improbable that petitioners would have kept any actual interest in these properties to themselves. Under these circumstances, we find to be untrue petitioners' testimony that their decisions to acquire Pleasant Hill and Skyland as replacement property were made during the identification period. As further evidence of the incredible nature of his testimony, petitioner husband repeatedly testified that he was not familiar with the 45-day identification requirement. Yet, Mr. Clack and several real estate agents testified that they regularly discussed the requirement with petitioners and that petitioner husband appeared to understand it.

We find that petitioners did not take any steps to identify Pleasant Hill or Skyland as replacement property during the identification period. Moreover, if taxpayers were permitted to identify replacement property between themselves without notifying an unrelated party or another party to the exchange, the identification requirement would be meaningless. Designation between married taxpayers would also create problems with the limitation on the number of properties permitted to be identified and would essentially be the equivalent of permitting taxpayers to identify an unlimited number of replacement properties. See St. Laurent v. Commissioner, T.C. Memo. 1996-150. We conclude

that petitioners did not identify the Pleasant Hill or Skyland properties as replacement property within the time period required by section 1031(a)(3)(A). Accordingly, the gain realized from the sale of the Antioch property is recognizable.

In the notices of deficiency, respondent determined the gain realized on the sale of the Antioch property without regard to petitioners' basis in the property. Section 1001 provides that the gain from the sale of property is the excess of the amount realized over the adjusted basis. The adjusted basis of property is its basis (cost) as determined under section 1011 and as adjusted by section 1016. Sec. 1012. The basis is adjusted for the costs of improvements and betterments made to the property. Sec. 1016(a)(1); sec. 1.1016-2(a), Income Tax Regs.

Petitioners paid $300,000 for 137 acres of the Antioch property and sold 117 acres of the property in the transaction at issue in this case. Petitioners' original basis in the 117 acres, based on the $300,000 purchase price, is $256,204, as conceded by respondent. Petitioners also expended approximately $30,000 in engineering and consulting costs to improve the 137 acres of the Antioch property. We find that petitioners' basis in the 117 acres of the Antioch property is $281,825, and their gain realized is $3,687,175 ($3,969,000-$281,825).

Installment Method

Petitioners argue that they are entitled to report any gain that they must recognize from the sale of the Antioch property in

1990 under the installment method of section 453.  Section 453 permits taxpayers to report gain from the sale of property in the year payment is received.  Payment includes amounts either actually or constructively received by the taxpayer.  Sec. 15A.453-1(b)(3)(i), Temporary Income Tax Regs., 46 Fed. Reg. 10710 (Feb. 4, 1981).  Taxpayers are not entitled to report gain under the installment method if they directly or indirectly control the sales proceeds or receive the economic benefit therefrom.  Roberts v. Commissioner, 643 F.2d 654, 656 (9th Cir. 1981) (citing Rushing v. Commissioner, 441 F.2d 593, 598 (5th Cir. 1971), affg. 52 T.C. 888 (1969)), affg. 71 T.C. 311 (1978); Estate of Silverman v. Commissioner, 98 T.C. 54, 64 (1992).

Respondent contends that petitioners are not entitled to use the installment sale method because petitioners constructively received the sales proceeds and received economic benefits from the proceeds in 1989.  Respondent argues that petitioners obtained control over the sales proceeds when they were deposited into the Clack Bros.' trust account.  The funds were used to make earnest money deposits on replacement properties that petitioners wanted to acquire, and petitioners negotiated the purchase price on the properties.  Based on these facts, respondent contends that petitioners directed how and when the sale proceeds were spent and, thus, had control over the sales proceeds.

Respondent argues that a seller cannot defer gain recognition under the installment method by placing the purchase

price with a third party for payment to the seller in a later year.  Respondent relies on a line of cases, including Griffith v. Commissioner, 73 T.C. 933 (1980); Pozzi v. Commissioner, 49 T.C. 119 (1967); and Oden v. Commissioner, 56 T.C. 569 (1971), among others, which found that the seller no longer looked to the buyer for payment and expected to collect the sales proceeds from a third-party source, such as an escrow account.  Petitioners, however, argue that the cases cited by respondent did not involve circumstances where substantial restrictions existed on the seller's right to the third-party funds.  Money deposited in an escrow account by a buyer is not deemed to be constructively received by the seller if the seller's right to receive the funds is subject to substantial limitations or restrictions.  Stiles v. Commissioner, 69 T.C. 558, 563 (1978); Champy v. Commissioner, T.C. Memo. 1994-355; see sec. 1.451-2, Income Tax Regs.

Here, the exchange agreement provides that petitioners were to transfer the Antioch property to Clack Bros. in exchange for property to be identified by petitioners.  To accomplish this, petitioners were to transfer title and assign the proceeds from the option agreement on the Antioch property to Clack Bros. Under the agreement, Clack Bros. would have became the seller; however, petitioners did not follow the agreement in that they retained title and transferred it directly to the purchaser. Clack Bros. did receive the sales proceeds and deposited them into the trust account.  Although the exchange agreement provided

that petitioners were not entitled to exercise control over the sales proceeds and Clack Bros. was obligated to use the sales proceeds to acquire replacement property designated by petitioners, we do not find the agreement with Clack Bros. to be a sufficient basis for finding a restriction on petitioners' ability to use the proceeds of sale.

Petitioners, as a guise, named 10 properties within the 45-day period with no apparent intention to use them as replacement properties. When the replacement properties suitable to petitioners were designated (after the 45-day period), petitioners, with Clack's cooperation and participation, backdated documents to make it appear that the properties had been timely identified. In this setting, we hold that petitioners have failed to show that any restriction on their ability to use the proceeds was sufficient to avoid constructive receipt in 1989. Accordingly, petitioners are not entitled to installment reporting into the 1990 taxable year.

Fraud Penalty

Section 6663(a) imposes a penalty equal to 75 percent of any underpayment that is due to fraud. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Edelson v. Commissioner, 829 F.2d 828, 833 (9th Cir. 1987), affg. T.C. Memo. 1986-223; Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601. Respondent has the burden of proving fraud by clear and

convincing evidence.  Sec. 7454(a); Rule 142(b).[3]  To satisfy this burden, respondent must prove that petitioners intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes.  Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Estate of Pittard v. Commissioner, 69 T.C. 391 (1977).  Fraud is never presumed and must be established by independent evidence that establishes fraudulent intent.  Edelson v. Commissioner, supra; Beaver v. Commissioner, 55 T.C. 85, 92 (1970).  Fraud may be proven by circumstantial evidence because direct evidence of the taxpayer's fraudulent intent is seldom available.  Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, supra; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).  The

---

[3] Petitioners had raised the defense that the period for assessment had expired when respondent issued the notice of deficiency for the 1990 year.  The 1990 year comes into play in the context of this case if petitioners are entitled to installment sale treatment.  In that event respondent would also have the burden of proving that an exception to the general period of limitations applies.  Stratton v. Commissioner, 54 T.C. 255, 289 (1970).  That question is mooted by our holding that petitioners are not entitled to installment reporting.  Even if petitioners had been successful on the installment reporting issue, respondent has carried the burden of showing a fraudulent return, and, therefore, the period for assessment would not have expired prior to issuance of the deficiency notice.  Sec. 6501(c)(1).

taxpayer's entire course of conduct may establish the requisite fraudulent intent.  Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969).

Courts have developed several indicia of fraud, or "badges of fraud", which include:  (1) Understatement of income, (2) inadequate books and records, (3) failure to file tax returns, (4) implausible or inconsistent explanations of behavior, (5) concealment of assets, (6) failure to cooperate with tax authorities, (7) filing false Forms W-4, (8) failure to make estimated tax payments, (9) dealing in cash, (10) engaging in illegal activity, and (11) attempting to conceal illegal activity.  Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990); Bradford v. Commissioner, supra at 307; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988).  This list is nonexclusive.  Miller v. Commissioner, 94 T.C. 316, 334 (1990).

The strongest evidence of fraud in this case consists of the false documents that petitioner husband prepared and solicited to make it appear that petitioners expressed an interest in the Pleasant Hill and Skyland properties within the identification period.  Submitting false documents to the IRS is an indication of fraud.  Stephenson v. Commissioner, 79 T.C. 995, 1007 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Association Cable TV, Inc. v. Commissioner, T.C. Memo. 1995-596.

Petitioners contend that their attorney Mr. Clack advised them to obtain the false documents.  Petitioners maintain that

they relied on Mr. Clack's advice and that they did not know that written identification was required and did not realize the significance of the false, backdated letters. We believe, however, that petitioner husband initiated the idea of backdating documents and falsifying identification and, more importantly, that petitioners knew their misrepresentations were fraudulent.

Mr. Clack maintains that it was petitioner husband's idea to falsify documents. In late October 1989, petitioner husband suggested backdating and falsifying a purchase offer and contract for another property not ultimately purchased by petitioners in order to fraudulently obtain section 1031 tax deferral. Mr. Clack denies that he advised petitioners to falsify documents to establish timely identification but admits that he assisted petitioners in perpetuating this fraud. Mr. Clack provided a backdated sample letter that petitioners used in soliciting the Pleasant Hill and Skyland letters. Mr. Clack contends that he believed that petitioners in fact had expressed an interest in the Pleasant Hill and Skyland properties during September to Ms. Love and Mr. Fivey and that he did not know that the letters were false (other than being improperly backdated). Petitioners received the sample letter from Mr. Clack before they expressed interest in acquiring Pleasant Hill or Skyland. Most likely, petitioners obtained the letter because they intended to create a false impression that they had timely identified whatever property they acquired.

Petitioners had repeated discussions with their real estate agents and Mr. Clack about the identification requirement and the need to adequately identify replacement property.  Mr. Clack advised petitioners of the need to acquire property that had been identified during the 45-day period.  Mr. Van Voorhis and other real estate agents counseled petitioners to have written documentation of their identification.  When Mr. Van Voorhis first showed Pleasant Hill to petitioners, he informed them that it could not qualify as replacement property because it was not timely identified.  A letter attached to the exchange agreement clearly informed petitioners of the need to identify property within 45 days of the sale of the Antioch property.

We find in this setting petitioners cannot rely on Mr. Clack's advice as an excuse for their fraudulent conduct.  They knew their actions were fraudulent because of the repeated advice they received.  Petitioners were not misled into committing fraud by their attorney, as they contend.  See Medieval Attractions N.V. v. Commissioner, T.C. Memo. 1996-455.  We consider it probative that petitioner husband pleaded guilty to submitting false documents to respondent's revenue agent in violation of section 7207.  Although this conviction does not alone establish fraudulent intent to evade taxes, it is evidence of petitioner husband's intent and propensity to defraud.  Petzoldt v. Commissioner, 92 T.C. 661, 701-702 (1989); Alvarez v. Commissioner, T.C. Memo. 1995-414.

Petitioners are highly successful, effective, and sophisticated real estate investors. They knew that they had not timely identified Pleasant Hill or Skyland as replacement property and that the transaction did not qualify as a section 1031 exchange. Petitioners reported the transaction as a section 1031 exchange and knowingly and deceptively deferred tax on over $3.5 million in taxable gain. Petitioners willfully took steps to disguise the taxable sale as a section 1031 exchange. Petitioner husband knowingly solicited fabricated letters from Mr. Fivey and Ms. Love. He also knowingly intended to commit fraud when he backdated a letter to Mr. Clack in which petitioner husband purported to identify Pleasant Hill and Skyland. It is likely that petitioner husband intended this letter to replace the Van Voorhis letter which identified 10 replacement properties, not including either Pleasant Hill or Skyland. Petitioners were involved in the preparation of these false documents and presented them to their accountant and to the IRS as part of their tax returns and in support of their reporting during the audit.

Petitioners argue the false documents were not fraudulent because written identification was not required under section 1031(a)(3)(A) and the regulations thereunder during the years in issue. This case involved more than fabricated written identification. We have found that petitioners did not show any interest in the Pleasant Hill property or the Skyland property

within the identification period, and we do not believe their self-serving and uncorroborated testimony that, during the identification period, they discussed these properties with each other and decided to buy them.

Although they knew that they had not identified Pleasant Hill or Skyland even verbally, petitioners misrepresented to the IRS that they had in fact identified the replacement property and reported the transaction as a section 1031 exchange. Petitioners knew that they would owe a substantial amount of tax if they did not timely identify replacement property. The law is clear with respect to this issue. Petitioners fabricated timely identification and obtained false documents to substantiate their claim. Petitioners knew that the letters were false and that their tax returns were false. The false letters, even if not required for adequate identification, are evidence of fraud. See Association Cable TV, Inc. v. Commissioner, T.C. Memo. 1995-596.

Petitioners' conduct presents clear and convincing evidence of their intent to defraud. Accordingly, petitioners are liable for a section 6663 fraud penalty for 1989.

To reflect the foregoing,

Decisions will be entered under Rule 155 in docket No. 3832-95 and for petitioners in docket No. 7382-96.